355 P.2d 703

STATE of Utah, Plaintiff and Respondent,

v.

James William WARWICK, Defendant and Appellant.

No. 9205.

Supreme Court of Utah.

Oct. 7, 1960.

Richard W. Campbell, Ogden, for appellant.

Walter L. Budge, Atty. Gen., Gordon A. Madsen, Ass't. Atty. Gen., for respondent.

CALLISTER, Justice.

Defendant was found guilty by a jury of murder in the first degree, with a recommendation that he be imprisoned at hard labor for life. From this verdict the defendant appeals.

On May 22, 1959, the body of Jonas Durant McCall was found lying face down in the Ogden River. He had been struck on the head four times. However, it was determined that the cause of death was by drowning. The area in which the body was found is near the railroad tracks west of Ogden, Utah and is frequented by tran-

sients and hoboes. The Ogden Police commenced a thorough investigation but no progress was made in the discovery of the killer.

On May 30, 1959, James Warwick reported his connection with the case. The defendant was being held in Oakland, California jail for being drunk and disturbing the peace. He was not under suspicion of implication in the death of Jonas McCall. On that date Officer Steinbrenner was making a routine tour of the cells in Oakland. As he passed the defendant's cell, the defendant called to him and said, "I'm going to pin a feather in your cap." The officer asked, "How is that?" The defendant answered, "Well, I wanted to tell you that I killed a man." The officer summoned Inspector Good of the homicide detail who met the defendant in an interview room. The defendant told the inspector that he wished to confess because he knew it was wrong to kill. The officer took his statement, at the conclusion of which another officer was asked into the interrogation room to sign the confession as a witness. At the trial the inspector who took the defendant's statement gave the following testimony:

"Q. Was any statement made to the defendant at that time with regard to the truthfulness of the statement? A. Yes.

"Q. What was said? A. He was asked if this was a voluntary statement freely given without promises, force or threats, or promises of leniency.

"Q. What did the defendant say? A. He said it was.

"Q. Was this in the presence of yourself and Officer Chamberlain? A. It was."

The witness then testified that the defendant signed the statement and that Officer Chamberlain also signed the statement after the defendant. The defendant waived extradition and was brought to Utah for trial.

The arguments that defendant relies upon in support of this appeal can be consolidated into three areas for discussion purposes: (1) The use of the defendant's confession, (2) the admission of certain testimony, and (3) error in instructing the jury.

(1) It is the general rule that one cannot be convicted of a crime when the conviction is based solely on the defendant's confession unless the corpus delicti is independently proven.[1] In the instant case this offers no problem.

It is the burden of the State to prove that the confession was voluntarily made.[2] In the present case we are not

---

[1] State v. Johnson, 95 Utah 572, 83 P.2d 1010.

[2] State v. Crank et al., 105 Utah 332, 142 P.2d 178, 170 A.L.R. 592.

faced with a situation where the defendant has been tortured or subjected to long periods of questioning. On the contrary the defendant made the confession at a time when he was not even a suspect in the case. Without the slightest suggestion from anyone the defendant offered to make a statement confessing to the murder of McCall. The inspector took the confession, writing it out in longhand, and after writing a paragraph would read the completed part to the defendant. When the statement was completed it was given to the defendant to read. After reading it he signed the statement in the presence of a witness, the whole procedure taking between one and a half to two hours. The confession, not appearing to be anything other than a voluntary confession was properly admitted into evidence. The weight to be given the confession was a matter that was properly left to the jury's consideration.

■ The defendant contends that there was error at the preliminary hearing concerning the use of the confession. Since the defendant pleaded to the information in the district court without first objecting to the information, he is conclusively presumed to have waived any defect.[3]

■■ The defendant contends that there was not sufficient evidence to prove that he was guilty of murder in the first degree. The defendant argues that the evidence is not sufficient to establish the necessary state of mind, i. e. "wilful, deliberate, malicious and premeditated."[4] He claims that there was not a showing of premeditation and deliberation because there was not time enough. The accused would have us believe that a person must kill after a cool, calm deliberation. Such is not always the case. The time necessary to premeditate and deliberate need only be long enough for some reflection and consideration upon the matter. It involves a choice to kill or not to kill. When the time is sufficient for this, it matters not how brief it is.[5] The defendant's confession in this case clearly establishes the necessary premeditation and deliberation to find a person guilty of murder in the first degree. It reads in part:

"When this man struck me with his fist I hit him over the head with the wrench, which was still in the paper sack. I hit him behind the left ear after swinging him around with my left hand. He dropped, and he was unconscious. I hit him eight or nine more times while he was lying helpless on the ground. He did not make any movements. His head was bloody. He did have a hat on when we first started

3. 77–16–2, U.C.A., 1953.
4. 76–30–3, U.C.A., 1953.

5. State v. Anselmo, 46 Utah 137, 148 P. 1071.

**120**

fighting but when I spun him around his hat fell off. He was laying on top of his coat and zipper bag at the time I was hitting him.

"When the fight started I had not intended to kill this man, but once I hit him I decided I would finish his life. To make certain of his death there was a creek about five feet below from where we fought. I dragged the body by one leg. The man was lying on his back. I dragged him down an incline and dragged the body into the creek. There was a pool of water about three or four feet in depth. I jerked the body into the creek where the pool of water was and turned the body over so that the face would be down and he would be sure to drown if he were alive."

■ (2) A witness by the name of Coil was called by the State. Through this witness's testimony the State attempted to prove that the defendant knew the deceased and they had had an argument prior to the time that the defendant killed McCall. It was a proper exercise of the court's discretion to permit the testimony to go to the jury. On cross-examination the defendant proved that the witness was not certain of the identity of the person he saw with McCall. His testimony was to that extent discredited, but the weight to be given it was for the jury's determination. No error was committed by its admission.

■ (3) At the trial, the defendant claimed that the killing of McCall was in self-defense. He contends that Instruction 24A constituted prejudicial error, not that it was an incorrect statement of the law, but rather that it was incomplete. The instruction reads as follows:

"The right of a self-defense, although justifying the infliction of injuries upon an assailant under certain circumstances, does not justify a continuance of the attack upon the assailant after he has been disabled and rendered incapable of inflicting further bodily injuries.

"Thus where a person is attacked under circumstances which justify his exercise of the right of self-defense, and thereafter he uses such force upon his attacker as to render the latter incapable of inflicting further injuries, the law of self-defense then ceases to be operative in the former's favor. If, under such circumstances, the person originally attacked thereafter inflicts further injury upon his attacker, such injury is not justified but is unlawful, and if further injury proximately causes the death of the original attacker, the person inflicting it is guilty of a

felonious homicide even though his use of force was lawful up to the time that he rendered his assailant incapable of inflicting bodily injury upon him."

The defendant claims that the court should have further instructed the jury that the defendant, having rendered the decedent helpless, had no affirmative duty thereafter to go to his aid. This argument is based upon the fact that at the trial the defendant claimed that at the conclusion of the fight the deceased was lying in the water, and he did not drag the body into the water. No issue was made at the trial that the defendant had such an affirmative duty. The prosecution's theory was based upon the defendant's confession to the effect that he had dragged McCall into the stream. The jury was at liberty to believe this theory and disbelieve defendant's testimony.

The trial court properly refused to incorporate defendant's request in Instruction 24A.

The jury had sufficient evidence before it to find the defendant guilty of murder in the first degree and a careful review of the record reveals no prejudicial error.

Affirmed.

CROCKETT, C. J., and WADE, HENRIOD, and McDONOUGH, JJ., concur.