489 P.2d 830

**The STATE of Arizona, Appellee,**

v.

**William GAUSE, Appellant.**

**No. 2099.**

Supreme Court of Arizona,
In Banc.

Oct. 19, 1971.

Rehearing Denied Nov. 9, 1971.

Gary K. Nelson, Atty. Gen., by William J. Schafer and William Dixon, Asst. Attys. Gen., Phoenix, for appellee.

Bernard I. Rabinovitz and William L. Berlat, Tucson, for appellant.

HAYS, Vice Chief Justice.

The appellant, William Gause, was tried and found guilty of the murder. of his estranged wife, Mary Ellen Gause. He appeals from his first-degree murder conviction and sentence of death.

On or about the 6th of September, 1967, the body of Mary Ellen Gause was found in her automobile in the desert south of Tucson. A coroner's inquest was held, at which time appellant, his mother, and his brother, James, each testified that following the filing of a divorce action by Mary Ellen on or about August 11, 1967, each of them took turns following the decedent home from work, hoping to discover evidence which could be used against her in the divorce proceeding.

All three witnesses testified at the inquest that on the night in question, Sep-

tember 3, 1967, appellant and his brother returned home to their mother's residence between 2:30 A.M. and 3:00 A.M. Appellant and his brother further testified that they saw the decedent alive and well at Sambo's Restaurant at approximately 1:30 A.M. They stated that following their arrival home, both went to sleep and did not arise until 8 o'clock in the morning.

No charges were then filed concerning the murder of Mary Ellen Gause and the case lay dormant until 1969. On or about January 30 of that year, the defendant's brother, James Gause, assaulted and beat his then pregnant wife, causing her to be hospitalized and possibly contributing to the eventual death of her baby soon after it was born. James negotiated an agreement with the County Attorney's Office whereby he would "tell the truth" about the death of Mary Ellen in return for a granting of immunity against impending charges of perjury and any charges with respect to the aggravated assault of his wife and the death of his child. As a result of this agreement, a complaint was filed against William Gause for murder.

James Gause testified at the trial that he had lied at the coroner's inquest and that on the night in question, he had let his brother off at Mary Ellen's home and had returned to his mother's alone. He stated that later that morning he received a telephone call from appellant informing him that appellant had killed the decedent and instructing him to pick him up in the desert near Tucson.

Appellant raises several points in his appeal. The first of these concerns the failure of the judge who presided at the Rule 1 hearing to disqualify himself as the magistrate of the preliminary hearing. Appellant asked that the judge disqualify himself on the grounds that his failure to do so would be a denial of appellant's right to a fair and impartial hearing. Appellant argued that since the function of a magistrate at a preliminary hearing was to find probable cause to bind an accused over for trial, the prior finding of probable cause to issue a warrant for arrest operated to au-

tomatically prejudice the magistrate in his determination at the preliminary hearing. We do not agree.

This court has held in State v. Lubetkin, 78 Ariz. 91, 276 P.2d 520 (1954), that in the absence of a showing to the contrary, it will be presumed that a magistrate has performed his official duties pursuant to the law and his oath of office. The burden is on appellant to point to actual prejudice on the part of the magistrate. There is no presumption that by making a prior determination of probable cause to issue an arrest warrant, a magistrate cannot thereafter make an independent and unbiased determination of whether probable cause exists to bind a defendant over for trial.

Appellant next contends that he was not accorded a fair and impartial jury. He alleges that three prospective jurors were excused for cause for expressing views which opposed the imposition of the death penalty. The record shows that each of the three jurors stated unequivocally that he could not impose the death penalty under any circumstances.

Under the holding of Witherspoon v. State of Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), a juror may not be excluded for cause if he voices only "general objections to the death penalty" or expressions of "conscientious or religious scruples against its infliction." He may be excluded, however, if he states that he would refuse to even consider its imposition in the case before him. Such was the position taken by each of the three jurors excluded for cause in the case at hand.

Appellant contends that the admission in evidence of the deceased wife's Will, expressing a fear that her husband would kill her, was reversible error. He further voiced objections at trial to testimony of witnesses who indicated that Mary Gause had expressed to them fear that her husband might kill her. Appellant argues that such evidence although showing the state of mind of the decedent as it relates to the identity of her murderer is

not admissible. He concedes that if he had asserted defenses of suicide, self-defense or accident, the state of mind of the victim might properly be in issue.

Both the appellant and the State point to our case, State v. Izzo, 94 Ariz. 226, 383 P.2d 116 (1963), as being supportive of their respective contentions. In that case the defendant husband asserted a defense of accident when charged with the murder of his wife. The court admitted testimony to the effect that the wife on the night before the shooting did not go back to her apartment but stayed with a close friend. The court speaking through Justice Struckmeyer said:

> "* * * The conduct is not hearsay. It is some evidence of the state of mind of the deceased the night before her death. Where the state of mind or feelings are an issue, evidence of actions and declarations at or near the time may be indicative thereof. (citing cases)" 94 Ariz. at 229, 383 P.2d at 118.

In People v. Merkouris, 52 Cal.2d 672, 344 P.2d 1 (1959), the trial court had admitted testimony from witnesses who related expressions by the murder victims regarding their fear of the defendant. The California Supreme Court upheld the trial court saying:

> "The trial court's rulings were correct. The victims' assertions of intent to avoid and protect themselves from defendant were admissible under the mental state exception to the hearsay rule as evidence that in fact they had such intent. The existence of that intent evidences the declarants' fear of defendant.

> "The declarations that defendant had threatened the victims were admissible, not to prove the truth of that fact directly, but to prove the victims' fear." 344 P.2d at 6

In State v. Vestal, 278 N.C. 561, 180 S.E. 2d 755 (1971), the North Carolina Supreme Court upheld the action of the trial court in permitting the wife of the murder victim to testify regarding the deceased's statement of where he intended to travel on a business trip from which he never returned. The court in overruling one of their cases of early vintage said that this fell under an exception to the hearsay rule developed and accepted over a period of time. The North Carolina court held, however, that the trial court had erred in admitting in evidence a note written by the murder victim outlining a transaction involving the defendant and the victim and expressing the victim's anger with the defendant. We fail to apprehend some of the nice distinctions with which the courts play in applying the hearsay rule.

The Supreme Court of Wyoming in Alcala v. State, 487 P.2d 448 (Wyo.1971), upheld the trial court in permitting a witness who had transmitted a threat by the defendant husband to his wife to repeat the victim's words, "This is not the first time; he has done this for years." The main issue in the case was the identity of the murderer. The Wyoming court didn't bother to discuss the fact that this was evidence of the victim's state of mind and whether or not her state of mind was relevant to the issues in the case.

We note that in the cases on this and related points the courts often resort to strained logic to attain the desired result. In determining the identity of the person committing a murder, the fact that the victim had reason to fear the defendant has some probative value. The indicia of reliability of the hearsay statements are as certainly present on the question of identity as they are on the issue of accident or suicide. We fail also to grasp the attempted distinction regarding when the state of mind of the victim is or is not in issue. We are not impressed with pious instructions to the jury which tell them to consider the statements of the victim only for the purpose of determining the victim's state of mind.

Courts have tended to permit hearsay to be introduced in evidence when, for some reason or other, such evidence has a special reliability. Udall, Arizona Law of Evidence 355 § 174. In examining the evidence objected to here, we find that al-

though it does not completely fit into any of the well recognized categories of exceptions to the hearsay rule, it does have a special reliability.

A bald expression of fear by a murder victim standing alone does not have sufficient reliability to be admitted. In fact, if the victim were alive to testify, a foundation would be required before her expressions of fear would be admissible. There is considerable testimony in the record here to show that the victim had a valid basis for fearing her husband. Domestic problems, the filing of a divorce action, the necessity for a restraining order, the removal of the victim to a hotel until the husband vacated the house, and the threats to kill voiced by the defendant husband in the presence of others, all accord a special reliability.

■ Let us meet the problem head-on, brush aside the sophistry, and say that expressions of fear by a murder victim, though they may be hearsay, are relevant, have probative value on the issue of identity, and, when in human experience they have sufficient reliability, they should be admitted in evidence.

Appellant argues that it was error to admit into evidence the testimony of the decedent's attorney and his secretary with regard to expressions of fear made to them by the decedent. Objection was made on the grounds that the testimony was hearsay and a violation of the attorney-client privilege. The former objection having already been answered, we turn to the latter.

■ The attorney-client privilege is embodied in our statutes under A.R.S. § 13–1802, which states:

"A person shall not be examined as a witness in the following cases:

\* \* \* \* \* \*

"3. An attorney, without consent of his client, as to any communication made by the client to him, or his advice given thereon in the course of professional employment."

In the case at hand, appellant is himself attempting to assert the privilege of his wife as to the confidential communications between her and her attorney. As is apparent from the statute, the privilege is that of the client and must be claimed by the client or someone authorized by law to do so on the client's behalf. The decision rendered by the Court of Appeals in State v. Hunt, 2 Ariz.App. 6, 406 P.2d 208 (1965), is of assistance in determining whether appellant qualified as a person authorized to claim the privilege, notwithstanding that case dealt with the physician-patient privilege. There, an attempt was made to claim the physician-patient privilege by parents charged with the aggravated assault and battery of their five-year-old daughter. The court stated that the relation of the parents to the patient did not confer on them the right to claim the privilege if, in so doing, they would be excluding otherwise valid evidence of their having committed a crime against their child. Where such a conflict of interest existed, said the court, the privilege could not be claimed.

■ Accordingly, where the situation is such that a husband will be using the privilege to exclude evidence that he may have committed a crime against his wife, the privilege cannot be conferred upon him.

■ Appellant's next contention is that the court erred in admitting testimony to show that James Gause had made prior consistent statements relating to the details of the death of Mary Ellen. James Gause had originally testified at the coroner's hearing that both he and appellant had gone home to their mother's and had gone right to sleep on the night in question. At the trial, on direct examination by the State, James Gause testified that, in fact, he had lied at the coroner's inquest and that he had let his brother off at the decedent's home and returned to his mother's home alone. He stated that later that night, he received a telephone call from appellant informing him that appellant had killed Mary Ellen and instructing him to pick him up in the desert near Tucson.

On cross-examination, defense counsel attempted to impeach the testimony of

James Gause by suggesting it was a recent fabrication, invented for the purpose of extricating himself from charges pending against him for assaulting his wife.

The State then brought James's former wife, Joyce, to the stand for the purpose of showing that James Gause had made prior consistent statements to her concerning the death of Mary Ellen. She testified that at a time much prior to the incident in which she was assaulted by James, he related to her that on the night in question he went home alone to his mother's and later received a call from appellant asking him to meet him out in the desert. James told her that appellant had admitted to him that night that he had killed Mary Ellen. Similar testimony was elicited from Patricia Rose Townsend, a former girl friend of James.

The authorities generally hold that when a witness is impeached by evidence tending to show that his sworn testimony is a recent fabrication, consistent statements made by that witness prior to the claimed fabrication may be admitted to refute the impeaching evidence. Sweazey v. Valley Transport, 6 Wash.2d 324, 107 P.2d 567 (1940). The court in *Sweazey* stated that an examination of the probative value of a prior consistent statement must be made before it can be declared admissible. In determining such:

"We are of the opinion the sole inquiry is whether or not the statement was made at such a time and under such circumstances that there was then no opportunity for outside suggestion, no probability of the statement being inspired by others —in other words, no apparent motive for falsifying. * * *" Sweazey v. Valley Transport, 107 P.2d at 572–73.

From our examination of the circumstances under which the statements of James Gause to his former wife and former girl friend were made, we conclude that they were made at a time when there was "no apparent motive for falsifying." The statements were made before James committed the assault on his wife and before the bringing of any charges from which he might have sought to extricate himself. Therefore, James could not have made such statements anticipating an accusation of recent fabrication.

Appellant also claims that these prior consistent statements are inadmissible hearsay. The sole purpose for the introduction of the consistent statements was to refute the impeachment, rather than to prove the truthfulness of the statements themselves, and hence there is no violation of the hearsay rule, Russell v. Cavelero, 139 Wash. 177, 246 P. 25 (1926).

Appellant's next contention relates to an order given regarding a motion to produce which asked that the State provide appellant with copies of any statements made by him to law enforcement officers and the names and addresses of any other person to whom an oral statement was made which was known to the State.

Presumably, appellant was desirous of obtaining this information so he could better prepare his defense. He complains that the trial court admitted the testimony of several witnesses despite his objections that these witnesses were not made known to him as required by the order granting the motion to produce. In examining the identity of the particular witnesses whose testimony is objected to, three of these witnesses, though not included in the State's written compliance with the order to produce, were listed on the information. The order to produce required only the names and addresses of those to whom oral statements were made by appellant. Appellant appears, then, to be basing his objections on the failure of the State to furnish the addresses of these witnesses. The record shows that all three of these persons were well known to appellant. No prejudice may be claimed solely for the lack of technical observance of the order to produce.

By the foregoing we do not mean to condone the action of the county attorney in failing to comply with the order to produce. If error it was, it was harmless error, however.

■ A fourth witness was a police officer who testified to a statement made to him by appellant. In answering appellant's objection, it was the trial court's ruling that appellant should have a continuance as to this witness for four days. It is this court's opinion that such time was sufficient to investigate the witness and prepare a defense regarding his testimony. We do not mean to imply that a continuance during the trial is always an adequate remedy to protect the rights of a defendant. There may be circumstances where the testimony of a witness is so central to the State's case that the defendant's ignorance of that witness's existence will too severely damage the case he has thus far prepared. *See* State v. Von Reeden, 9 Ariz.App. 190, 450 P.2d 702 (1969). However, this is not the case here. The record reveals that the testimony of this police officer was not of central importance in proving the State's case, and therefore, appellant was not prejudiced by the remedy employed by the court, namely, continuance.

■ The name of the fifth and last witness whose testimony was the subject of objection was not indorsed on the information. However, his testimony was also of no central importance. A continuance would have been an adequate remedy for appellant. Since none was asked for, there can be no claim of prejudice now as to lack of preparedness to meet his testimony. Where appellant has an adequate remedy to prevent surprise and unfairness, no claim of prejudice will be heard.

■ Appellant's next contention is that the trial court abused its discretion in refusing to grant appellant's motion for change of venue. Rule 201 of the Arizona Rules of Criminal Procedure, 17 A.R.S. provides for such a motion when it can be shown that a "fair and impartial trial" cannot be had. In support of its motion, appellant cited thirty-one local newspaper articles that appeared from the time of the murder through the first three days of the trial.

It is to be noted that the trial took place almost two years after the time of the murder. Therefore, the articles to which a jury panel might have had access concerned an event which was somewhat remote in time. It is also to be noted that at the beginning of the examination of the jury panel, the trial judge specifically asked the panel whether what they might have read about the case had influenced them to the extent that they were incapable of maintaining an impartial position. None indicated that they were affected by the case's publicity.

■ The decision on the granting of a change of venue is a matter of the trial court's discretion. State v. Woolery, 93 Ariz. 76, 378 P.2d 751 (1963). In light of the record before us, we find no abuse of discretion.

■ Appellant's final point on appeal is that his constitutional rights were infringed by the failure of the trial court to grant a bifurcated trial with respect to the penalty phase of the proceedings. The Supreme Court of the United States has recently ruled definitively on this point in the case of McGautha v. California, 402 U.S. 183, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971). It was there held that a unitary trial on the issues of guilt and punishment in a capital case is not a violation of a defendant's constitutional rights.

Having found no merit in any of the several contentions of appellant, the decision of the trial court is affirmed.

Judgment of conviction affirmed.

STRUCKMEYER, C. J., and UDALL, LOCKWOOD and CAMERON, JJ., concur.