498 P.2d 662

STATE of Utah, Plaintiff and Respondent,

v.

Thomas Devon GEE, Defendant and Appellant.

No. 12248.

Supreme Court of Utah.

July 7, 1972.

John D. Russell, Glen S. Hatch, Salt Lake City, for defendant-appellant.

Vernon B. Romney, Atty. Gen., David S. Young, Larry V. Lunt, Asst. Attys. Gen., Salt Lake City, for plaintiff-respondent.

CALLISTER, Chief Justice:

Defendant was convicted by a jury of the crime of murder in the first degree,

with a recommendation of leniency. He was sentenced to life imprisonment by the court; he appeals therefrom.

Defendant was accused of murdering Craig Peterson, a 22-month-old baby. Craig was the son of Marilyn Peterson, who commenced cohabiting with defendant sometime in September 1969. Shortly thereafter Craig began sustaining injuries, while in the care of defendant. First, the baby received a second- or third-degree burn to his foot, which in the opinion of a physician who treated the burn, was caused by a vehicle cigarette lighter. A short time later, the child received second-degree burns to the tops of his toes and feet; there were no burns on the bottom of the toes or feet. These burns were allegedly sustained when the defendant attempted to bathe the baby in a bath with hot water. The attending physician who treated the burns further observed multiple bruises over the buttocks and extending down the backs of the thighs; the injuries were allegedly sustained in a fall down the stairs. The child was hospitalized for several days and released about October 1, 1969.

The incident which led to the instant charge occurred on October 5, 1969, at approximately 9:15 p.m. The mother left the fully-clothed child sleeping in his crib in the upstairs bedroom and went to the store to purchase milk. Upon her return, she was greeted by the defendant holding the unconscious baby, who was clad only in a shirt. The mother was informed that the child had taken a fit and swallowed his tongue. The child was taken to the hospital. The attending physician testified that the baby had multiple discrete (well demarcated) bruises about the face, lower back and legs. He also had discrete bruising about the fleshy part of both ears, as well as bruises just anterior to both ears, around the temple region, and behind the left ear over the mastoid process. The discreteness of the bruises suggested that they were fresh. There was blood in the ear canal of the left ear of the baby, and his ear drum was ruptured. The physician diagnosed the condition of the child as an acute subdural hematoma (a large blood clot on the brain). The physician found that the blood was beginning to clot in the left portion of the skull and was creating pressure on the brain; this condition was indicative of recent injury.

A neurosurgeon performed surgery on the baby in the early hours of October 6, 1969; he made cranial burr holes to drain the subdural hematoma. The child expired during the morning hours. A pathologist, who performed an autopsy, testified that cause of death was injury to the brain including subdural hemorrhage, which he attributed to trauma to the head. The physician testified that the subdural hematoma could have been caused by one or multiple blows to the head; there was evidence of multiple blows.

A witness, Margie Williams, testified that she went to the dwelling shared by the defendant, the decedent and his mother on the evening of the alleged incident. She knocked on the back door; she heard the baby crying, "Don't, it hurts!" When no one responded to her knock, she went to the window and observed defendant coming down the stairs, holding the baby by its ears. As defendant descended the stairs, he took the child's head and hit it against the stair railing. The witness knocked on the window, and when defendant responded, he told her that if she said anything, he'd kill her children. The witness went home.

Based on the foregoing evidence, the defendant was convicted of first-degree murder. On appeal, defendant contends that upon the evidence adduced, a reasonable mind could not be convinced beyond a reasonable doubt that the baby's death was caused by the wilful, deliberate, malicious and premeditated actions of the accused. He urges that the evidence was insufficient to sustain a verdict of murder in either the first or second degree, Sec. 76-30-3, U.C.A.1953. He asserts that there was no evidence to indicate that he, at any time, contemplated, designed or planned the death of the baby. He claims that the jury was allowed to infer premeditation and deliberation from a few prior occasions when he had injured the child. He argues that the fact that death occurred a few hours after the fatal injury was sustained would negate any fixed intent to effect the death of the baby. The defendant concludes that the trial court erred in denying his motion to dismiss and submitting the cause to the jury.

The evidence of previous maltreatment of the baby by defendant was admissible for the purpose of showing defendant's malice toward the decedent.[1] Murder in the first degree requires a wilful, malicious and premeditated killing, i. e., the fatal blow must be struck after one deliberately and premeditatedly forms a specific intention or design to kill.[2] The time necessary to premeditate and deliberate need only be long enough for some reflection and consideration of the matter; it involves a choice to kill or not to kill. When the time is sufficient for this, it matters not how brief it is.[3] The time required for premeditation and deliberation is a question of fact to be determined by

1. People v. Thiede, 11 Utah 241, 258, 39 P. 837 (1895); State v. Plunkett, 62 Nev. 258, 149 P.2d 101, 109 (1944); Seals v. State, 92 Okl.Cr. 272, 222 P.2d 1037, 1052 (1950).

2. State v. Russell, 106 Utah 116, 131, 145 P.2d 1003 (1944).

3. State v. Warwick, 11 Utah 2d 116, 119, 355 P.2d 703 (1960).

the jury.[4] The facts and circumstances by their very nature may show premeditation, deliberation and malice aforethought.[5] Direct evidence of a deliberate and premeditated purpose to kill is not required; the elements of deliberation and premeditation may be inferred from proof of such facts and circumstances as will furnish a reasonable foundation for such an inference.[6]

■ In the instant action, the evidence is sufficient to support the conclusion of the jury that the defendant removed the baby from its crib, and after deliberately and premeditatedly forming a specific intention to kill, he struck the fatal blow.

The defendant further asserts that the trial court committed prejudicial error by admitting into evidence certain colored photographs, which defendant claims were gruesome and inflammatory in nature. He urges that any probative value of these exhibits as to the material facts in issue was far outweighed by the effect on the jury; i. e., the photographs aroused the passions of the jury to the prejudice of defendant.

Defendant pleaded not guilty, and it was incumbent on the prosecution to prove each element of first-degree murder beyond a reasonable doubt. Where pictures are probative of essential facts in issue, they are not necessarily incompetent because they are gruesome, even though they are corroborative of other testimony. The question of the propriety of admitting such evidence is largely within the discretion of the trial court, and in the absence of abuse thereof, the ruling will not be disturbed on appeal.[7]

■ A review of the photographs in the instant action does not even reveal the gruesome characteristics alleged by the defendant. The trial court did not err in its admission of these highly probative exhibits,[8] which clearly refute any claim of accidental injury to the decedent.

Defendant contends that witnesses, Marilyn Peterson and Margie Williams, were accomplices, whose testimony required corroboration as provided in Sec. 77–31–18, U.C.A.1953; and, therefore the trial court erred in its failure to so instruct the jury and by its denial of defendant's motion to dismiss. Defendant claims that these witnesses were present in the home and other places when the child incurred several of its injuries. He reasons that their pres-

---

4. State v. Stenback, 78 Utah 350, 364, 2 P.2d 1050 (1931).

5. State v. Karumai, 101 Utah 592, 599, 126 P.2d 1047 (1942).

6. People v. Miller, 71 Cal.2d 459, 78 Cal. Rptr. 449, 455 P.2d 377, 387 (1969).

7. State v. Johnson, 25 Utah 2d 46, 50, 475 P.2d 543 (1970).

8. See State v. Poe, 21 Utah 2d 113, 441 P.2d 512 (1968); State v. Jackson, 22 Utah 2d 408, 454 P.2d 290 (1969); State v. Renzo, 21 Utah 2d 205, 441 P.2d 392 (1968).

ence and acquiescence suggest support and encouragement. Without the testimony of these witnesses, there was no evidence to connect defendant with the injuries and death of the baby.

 Defendant's assertion is without merit. The baby died of head injuries; there is not a scintilla of evidence to indicate the witnesses advised, instigated, encouraged or assisted defendant in the perpetration of this crime. Furthermore, mere presence combined with knowledge that a crime is about to be committed, where the person contributes nothing to the doing of the act, will not of itself constitute one an accomplice.[9]

Defendant further asserts that the trial court erred in denying his motion for a new trial on the ground that the jury discussed his failure to testify and considered this as a factor in arriving at its verdict. Defendant claims that this discussion constituted misconduct on the part of the jury and indicated a failure of the jury to follow the court's instruction concerning the accused's failure to testify.

Defendant invokes Sec. 77–38–3(3), U. C.A.1953, as the statutory ground to support his motion for a new trial.

When the jury . . . have been guilty of any misconduct by which a fair and due consideration of the cause may have been prevented.

Defendant called as a witness, juror Donna Johnson, who testified that there was conversation in the jury room as to why defendant was not permitted to testify in his own behalf. Mrs. Johnson testified that she would not have concurred in the verdict, had the discussion of defendant's failure to take the stand not been a significant part of the deliberations.

In a long line of decisions in this jurisdiction, the principle has been firmly established that evidence by affidavit or testimony of a juror will not be received to impeach or question the jury verdict or to show the grounds upon which it was rendered, or to show their misunderstanding of fact or law, or that they misunderstood the charge of the court, or the effect of their verdict, or their opinions, surmises and processes of reasoning in arriving at a verdict.[10]

In Ogden L. & I. Ry. Co. v. Jones [11] this court stated:

If a juror is actually guilty of misconduct, one or more of the other jurors

9. State v. Fertig, 120 Utah 224, 228, 233 P.2d 347 (1951); State v. Bowman, 92 Utah 540, 548, 70 P.2d 458 (1937).

10. People v. Flynn, 7 Utah 378, 384, 26 P. 1114 (1891); State v. Riley, 41 Utah 225, 239, 126 P. 294 (1911); People v. Ritchie, 12 Utah 180, 194, 42 P. 209 (1895); State v. Rosenberg, 84 Utah 402, 407, 35 P.2d 1004 (1934).

11. 51 Utah 62, 70, 168 P. 548, 551 (1917).

may testify to the facts constituting the alleged misconduct, or the same may be proved by any witness who observed and knows the facts. It is well settled, however, that the alleged misconduct may not be established by merely proving his declarations . . . .

The foregoing principle has been recently incorporated in Rule 41, Rules of Evidence; it provides:

Upon the inquiry as to the validity of a verdict or an indictment no evidence shall be received to show the effect of any statement, conduct, event or condition upon the mind of a juror as influencing him to assent to or dissent from the verdict or indictment or concerning the mental processes by which it was determined, . . . .

The State of Kansas has a statute, K.S.A. 60–441, with provisions which are substantially similar to Rule 41, U.R.E. In State v. Morgan[12] the defendant, at a hearing on a motion for a new trial, sought to show by the testimony of a juror that there was discussion in the jury room to

the effect that the defendant did not testify and thus the jury was under the impression that he might have been guilty. On appeal the court cited K.S.A. 60–441 and stated that thereunder the trial court properly excluded evidence as to the alleged mental processes by which the jury arrived at a verdict of guilty.[13]

■ In the instant action the testimony proffered by the juror did not relate to extrinsic misconduct, that is, to physical facts, conditions or activities which might have a bearing upon or which might influence the jury in its determination of guilt or innocence. (Rule 44, U.R.E.) The testimony related solely to the discussions and reasoning process by means of which the jury arrived at its verdict. This evidence was inadmissible for the purpose of impugning the verdict, and should have been excluded at the hearing of defendant's motion for a new trial.[14]

Defendant finally asserts that the cumulative effect of the foregoing errors deprived him of a fair trial.

12. 207 Kan. 581, 485 P.2d 1371, 1372 (1971).

13. Also Ingram v. State, 204 Kan. 836, 465 P.2d 925, 926 (1970).

14. See VIII Wigmore on Evidence, § 2348, pp. 566–567, wherein it is stated that the parol evidence rule applies to jury verdicts. "The jurors' deliberations during retirement, their expressions, arguments, motives, and beliefs, represent that state of mind which must precede every legal act and is in itself of no jural consequence. The verdict, as finally agreed upon and pronounced in court by the jurors, must be taken as the sole embodiment of the jury's act. Hence it stands, irrespective of what led up to it in the privacy of the jury-room,—precisely as the prior negotiations of the parties to a contract disappear from legal consideration when once the final agreement is reduced to writing and signed. . . ."

·'The allegation of cumulative error must be evaluated in conformity with the provisions of Sec. 77–42–1, U.C.A.1953; an appellate court must render judgment without regard to errors or defects which do not affect the substantial rights of the parties. Upon a review of the entire record in the instant action, no errors of sufficient gravity emerge so as to indicate that defendant's rights were prejudiced in some substantial manner, i. e., there were no errors of such a nature as to make it reasonably probable that there would have been a result more favorable to defendant in the absence of error.[15]

The judgment is affirmed.

TUCKETT, HENRIOD, ELLETT and CROCKETT, JJ., concur.

---

15. State v. Baran, 25 Utah 2d 16, 18–19, 474 P.2d 728 (1970).