The **STATE of Utah, Plaintiff and Respondent,**

v.

**Ben J. WAUNEKA, Defendant and Appellant.**

**No. 14306.**

Supreme Court of Utah.

Feb. 18, 1977.

---

1. Rule 69(f)(3), Utah Rules of Civil Procedure.

Lynn R. Brown, Salt Lake Legal Defenders Ass'n, Salt Lake City, for defendant and appellant.

Vernon B. Romney, Atty. Gen., State of Utah, William W. Barrett, Asst. Atty. Gen., R. Paul Van Dam, Salt Lake County Atty., Salt Lake City, for plaintiff and respondent.

ELLETT, Chief Justice:

The appellant was the defendant below. He was charged with the crime of murder in the second degree and found guilty of the included offense of manslaughter and was duly sentenced for that crime. He appeals claiming errors as follows:

(1) The trial court erroneously permitted statements made by deceased to be admitted in evidence.

(2) The trial court permitted evidence that tended to show the defendant had committed another crime prior to the one with which he was charged.

(3) There was insufficient evidence to permit the jury to consider the matter.

The evidence shows that the defendant and his wife had been drinking heavily on the night of January 21, 1975. The defendant called the police the next morning and reported that his wife appeared to be dead. An examination of the house revealed bloody clothing belonging to the deceased in the bathtub, blood on some paper towels in a waste basket in the bedroom, a bloody wash cloth in the bathroom sink, blood stains on the bed sheets upon which the victim was lying, and that the body of the victim was covered with bruises.

The defendant denied striking his wife and told how they both became very intoxicated the night before, and his wife fell down twice while trying to walk from the kitchen to the bedroom; and that since she was unable to stand, he set her against the end of the bed and tried to revive her by pouring water on her. He further stated that he, also being intoxicated, went to sleep on the bed and never awoke until the next morning when he called the authorities.

The state medical examiner testified that the victim had approximately seventy-five bruises on her body and gave his expert opinion that death was caused by a blow from a fist and then by a fall.

The prosecution also introduced testimony showing that the victim said she was afraid of her husband, that he beat her regularly and that she felt he would kill her.

The defendant testified that he slapped his wife only to try to revive her.

## STATEMENT OF DECEASED

A lady acquaintance of the deceased testified for the state that the victim came to the store where the witness worked about five days before her death. She said the victim had swollen eyes and a bruise on her face. When asked about her condition, the victim replied: "You call the police for me—I can't, if Ben (the defendant) finds out I called the police, he'll kill me."

The state also called a social worker who testified that she visited the victim on January 20, 1975, and at that time the victim had bruises all over her body and that she was shaking and stated that if she left her husband, he would kill her.

The trial court admitted the hearsay testimony for the limited purpose of showing the state of mind of the deceased at the time she made the statement. The Utah Rules of Evidence promulgated by this Court provide:

RULE 63. HEARSAY EVIDENCE EXCLUDED—EXCEPTIONS

Evidence of a statement which is made other than by a witness while testifying at the hearing offered to prove the truth of the matter stated is hearsay evidence and inadmissible except:

\*     \*     \*     \*     \*     \*

(12) Statements of Physical or Mental Condition of Declarant. Unless the judge finds it was made in bad faith, *a statement of the declarant's (a) then existing state of mind,* emotion or physical sensation, including statements of intent, plan, motive, design, *mental feeling,* pain and

bodily health, but not including memory or belief to prove the fact remembered or believed, *when such a mental or physical condition is in issue or is relevant to prove or explain acts or conduct of the declarant,* . . . [Emphasis added.]

The statement made by the deceased that Ben would kill her if she called the police or left him may well be proof of her then state of mind and of her mental feeling; but *her* then mental condition is not an issue in this trial, nor is it relevant to prove or explain *her* subsequent acts or conduct.

In the case of *State v. Radabaugh,*[1] hearsay declarations of fear on the part of a deceased were permitted. The case simply held that the statement was probative of the state of mind of the declarant but took no account of the possible prejudice to the defendant nor of the relevance of that state of mind.

The case of *State v. Shirley,*[2] likewise permitted the hearsay evidence to be considered on the ground that "the state had a right to show the state of mind of the victim at the time of and shortly prior to the homicide and for that purpose to show what circumstances as expressed by the victim contributed thereto." Another case holding the same way is *State v. Gause.*[3]

We do not think such statements as were admitted in the cases cited above would be admissible under our rules of evidence as being relevant to prove or explain acts or conduct of the declarant or as being an issue in the case.

There are circumstances where the declarations of the decedent would be relevant and material. A case of self-defense affords such a situation. The Wyoming case of *State v. Kump*[4] is in point. In that case the defendant killed his wife. The state called a witness who testified that the wife told him that the defendant drank part of a bottle of wine and said, "I am going to get rid of you, and if you don't leave, I'll kill

you. I'll choke you to death . . . ." The trial court admitted the testimony over the objection of the defense counsel. The Wyoming court stated:

The attitude of the mind of deceased toward the defendant as evidenced by outward manifestations, such as declarations, is at times relevant when the defendant pleads self-defense. [Citations] In such case the attitude of mind is to show the *hostile* attitude of the deceased which would justify self-defense or perhaps reduce the degree of the crime, or the severity of the sentence. That is not the situation in the case at bar. The important fact here is the attitude of the mind of the *defendant,* not that of *deceased.* The attitude of mind of the deceased toward the defendant was immaterial. [Emphasis original.]

The court affirmed the conviction despite the error because the evidence was so strong that the court said there was ample testimony to convict the defendant aside from that which was erroneously admitted and that a new trial would result in again finding the defendant guilty. The court also said that since the charge was murder in the second degree, the error was cured by a conviction of manslaughter only.

The case of *People v. Lew*[5] is of interest. There the defendant was convicted of murder in the second degree for killing his mistress. He claimed the fatal shot was accidentally fired. Witnesses for the prosecution testified that the victim had, prior to her death, told them that the defendant had threatened to kill her and harm her parents if she confided in them. The court held that the statements should have been excluded from the evidence and "that such testimony is not admissible if it refers solely to alleged past conduct on the part of the accused. This is so because to try and separate state of mind from the truth of the charges is an almost impossible task."

---

1.  93 Idaho 727, 471 P.2d 582 (1970).

2.  7 Or.App. 166, 488 P.2d 1401 (1971).

3.  107 Ariz. 491, 489 P.2d 830 (1971).

4.  76 Wyo. 273, 301 P.2d 808 (1956).

5.  68 Cal.2d 774, 69 Cal.Rptr. 102, 441 P.2d 942 (1968).

■ Pre-death hearsay statements of a victim in homicide cases are generally admissible when the defendant claims self-defense.[6] They may also be properly admitted where the defense is that the death was accidental and that the victim was an aggressor.[7] They are not generally admitted in criminal cases where self-defense is not at issue. In *People v. Ireland*,[8] the prosecution offered to prove that the deceased had said prior to her death, "I know he's going to kill me. I wish he would hurry up and get it over with. He'll never let me leave." It was offered to show the state of mind of the decedent as being relevant to show the probabilities of the decedent's conduct— that she would not have done anything to provoke the defendant. The California Supreme Court held in that case:

> (the) 'acts or conduct of the declarant', . . . at the time of the homicide were simply not in dispute; . . . (There was no claim of self-defense raised in the case.) In such circumstances it must be concluded that the hearsay statement . . . was improperly admitted into evidence. (Parenthesis added.)

■ Where it is claimed the deceased committed suicide there would seem to be relevance in the hearsay statements of the decedent which would tend to explain acts or conduct on the part of the *declarant*. Perhaps such statements would be relevant where there is a question as to the identity of the one who committed the homicide. In the instant matter, however, there is no claim of self-defense or of identity of the perpetrator of the offense.

The Circuit Court of the District of Columbia in the case of *U. S. v. Brown*[9] correctly criticizes those cases which allow the hearsay statements to be given in evidence when they are immaterial to show any act or conduct on the part of the deceased. It said:

There are a number of other cases which have allowed in testimony of this type on the basis of various errors in reasoning or simple lack of concern. One of the principal problems which brings this about is a court's understandable eagerness to find an "easy" rule, simple in operation. This leads to a tendency to adopt a mechanistic approach devoid of analysis. For example, in *State v. Radabaugh*, 93 Idaho 727, 471 P.2d 582 (1970), the Idaho Supreme Court, dealing with a hearsay declaration of fear on the part of the deceased victim, simply identified the statement as probative on the issue of the state of mind of the declarant, referred to the fact that a limiting instruction had been given and then pronounced it admissible in a conclusory and offhanded manner. Such a simplistic approach sidesteps any preliminary determination of relevance and does not begin to weigh the possible prejudice contained in such statements. . . .

Similarly, in *State v. Gause*, 107 Ariz. 491, 489 P.2d 830 (1971), the Arizona Supreme Court, apparently attempting to adopt a "progressive" approach, laid down a rule that such expressions of fear are admissible as long as they have sufficient reliability. While an attempt to break out of the confines of some of the archaic niceties of the hearsay exceptions in favor of a rule of admissibility dependent only on the presence of special guarantees of reliability has something to commend it, this only answers half the question. That is, the *Gause* court (and the other courts which place so much reliance on such indications of special trustworthiness) failed to move on to the second question—that of relevance which also has something to commend it. The court's rule simplified the question of whether certain testimony falls within the state of mind exception to the hear-

---

**6.** *People v. Schindler,* 273 Cal.App.2d 624, 78 Cal.Rptr. 633 (1969).

**7.** *People v. Atchley,* 53 Cal.2d 160, 346 P.2d 764 (1959).

**8.** 70 Cal.2d 522, 75 Cal.Rptr. 188, 450 P.2d 580 (1969).

**9.** 160 U.S.App.D.C. 190, 490 F.2d 758 (1973).

say rule but entirely ignored the relevance balancing process which seeks to avoid undue and unnecessary prejudice and confusion.

The undesirable results of the application of such a single-step approach become apparent in those cases in which courts allow the admission of such hearsay declaration of fear in spite of the fact that the state of mind of the declarant simply bears too tenuous a relationship to the issues in the case. For example, in *State v. Shirley*, 7 Or.App. 166, 488 P.2d 1401 (1971), the court, on facts strikingly similar to those at hand here, felt that the evidence should be admitted on the rather flimsy ground that "(t)he state had a right to show the state of mind of the victim at the time of and shortly prior to the homicide and for that purpose to show what circumstances as expressed by the victim contributed thereto." (488 P.2d at 1403.) Here again there is an undesirable failure to address the relevance issue. The court considered its task at an end merely by identifying the statement as bearing on the victim's state of mind, neglecting to undertake the vital step of balancing the necessity for the evidence and its probative value against the strong likelihood of extremely damaging prejudicial effects.

■ In the instant matter, the trial judge instructed the jury that the hearsay statement "is proper for you to consider only insofar as it may tend to shed light on the state of mind of the decedent toward the defendant and not for the truth of what was said."

That instruction did not cure the harm. Whether the victim loved or hated the defendant, or whether she feared him or ignored him throws no light on his guilt or innocence. The jurors were most likely to believe that the statements made by the wife were true and that the defendant had beaten her and threatened to kill her; therefore, he did kill her.

The admission of the hearsay statements into evidence constituted prejudicial error

and the case must be reversed. Other assignments of error are without merit.

The judgment of the trial court is reversed, and remanded for a new trial.

MAUGHAN, WILKINS and HALL, JJ., concur.

CROCKETT, Justice (dissenting).

I quite agree with the idea that the deceased's state of mind toward defendant, that is, whether she loved or hated him, would be immaterial. The issue in this case appears to be whether the death of defendant's wife resulted from being beaten by him which seems to me to be the only reasonable view of the evidence, as contrasted with the defendant's almost preposterous contention that all blood and gore about the place and about seventy-five wounds on her body resulted from accidental falling. Therefore, any evidence which could reasonably be regarded as probative on what was the truth on that issue would be material.

The matter of critical concern is the competency of the evidence in question. The general and fundamental test which underlies the determination of competency is: what are the assurances of credibility?

The facts indicate that five days before the crime, a store clerk, Ms. April Dahl, observed that the deceased had a bruised face and a swollen eye. Ms. Dahl testified that upon her inquiry, the deceased stated, "Ben's beating me" and that she wanted her (Ms. Dahl) to call the police because the defendant would "kill me if he finds out I made the phone call."

This testimony of Ms. Dahl was as to statements made by the deceased, shortly after she had been beaten by the defendant. It was an expression naturally and logically arising out of her observed physical condition, where there would be no motive to falsify; and which had logical relevancy to the issue: whether beatings by defendant resulted in her death. The matter of remoteness in time (four days prior) goes to its weight, not to its admissibility. The first statement comes within an exception

to the hearsay rule under Rule 63(12)(a), Utah Rules of Evidence, as "a statement of the declarant's . . . pain and bodily health, . . . when such a mental or physical condition is in issue . . .," i. e., whether defendant was thus beating her and continued to do so, causing her death. The second part of the evidence, requesting the phone call because defendant will "kill me if he finds out I made the phone call," finds further support in that it can reasonably be regarded as a product of her fear and apprehension of injury and therefore as "a statement which the judge finds was made while the declarant was under the stress of a nervous excitement" caused by the event or perception which the statement narrates, describes or explains, as provided in Rule 63(4)(b), Utah Rules of Evidence.

The same analysis applies to the testimony of the social worker, Ms. Regina Betonney, as to the conversation she had with the deceased the day before the murder. Ms. Betonney saw the deceased on that day and testified that she had bruises on her cheek, chin, forehead and arms. When Ms. Betonney asked how she got the bruises, the decedent stated that the defendant beat her up and that she was "just his punching bag." At the time, the deceased was shaking and stated that if she left her husband, he would kill her.

These statements also go to the central issue in this case: how did the decedent meet her death? As was noted in *United States v. Brown,* footnote 9, main opinion, such evidence has been held admissible:

> Quite a number of courts have confronted facts similar to those involving hearsay statements made by the victim of a homicide which inferentially implicate the defendant. Such statements by the victim *often include previous threats made by the defendant towards the victim, narrations of past incidents of violence* on the part of the defendant or general verbalizations of fear of the defendant. While such statements are admittedly of some value in presenting to the jury a complete picture of all the

facts and circumstances surrounding the homicide, it is generally agreed that their admissibility must be determined by a careful balancing of their probative value against their prejudicial effect. [490 F.2d at 765–66.] [Emphasis added.]

The statements under attack could reasonably be regarded as relevant and probative of the issue as to the cause of death: and the circumstances under which they were made give sufficient assurances of credibility. These matters, and whether the probative value would be outweighed by danger of undue prejudice to the defendant in having a fair trial were for the trial court to determine. See Rule 45, Utah Rules of Evidence. It has been held that inasmuch as the crime of murder requires that the act be wilfully and intentionally committed, evidence of previous injury to or maltreatment of the victim, by the defendant, is admissible as relevant on the issue of the defendant's intent. (*State v. Gee,* 28 Utah 2d 96, 498 P.2d 662, and authorities therein cited.)

Some point is made of the fact that the court instructed the jury that such evidence should not be considered as to its truth or falsity, but only as bearing on the deceased's state of mind. Assuming that the evidence was competent, as I have set forth above, the instruction thus restricting its consideration, would not be prejudicial to the defendant, if anything it would be to his benefit.

It is therefore my opinion that neither the admission of the evidence, nor the instructions concerning it, was prejudicial error in the sense that in the absence thereof there is any reasonable likelihood that there would have been a different result. It is the mandate of our statute, Sec. 77–42–1, U.C.A.1953, and in implementation thereof, the well established rule of our decisional law, (e. g., *State v. Miller,* 24 Utah 2d 1, 464 P.2d 844) that we should disregard any error or irregularity unless it is of sufficient substance that in its absence there is a reasonable likelihood that there would have been a different result. Wherefore, I would affirm the conviction.