385 So.2d 1020 (1980)
Annita Louise KENNEDY, Appellant,
v.
STATE of Florida, Appellee.
No. 77-2029/NT4-80.
District Court of Appeal of Florida, Fifth District.
May 21, 1980.
Rehearing Denied July 30, 1980.
David M. Porter, Public Defender, Titusville, and Joan H. Bickerstaff, Asst. Public Defender, Rockledge, for appellant.
Robert L. Shevin, Atty. Gen., Tallahassee, and Joy B. Shearer, Asst. Atty. Gen., West Palm Beach, for appellee.
JOHN H. MOORE, II, Associate Judge.
The appellant, Annita Louise Kennedy, was convicted of the first degree murder of her husband, Charles Dwight Kennedy, and sentenced to life imprisonment. She now appeals her conviction on the ground that the admission of certain hearsay evidence, over defense objection, was erroneous and prejudicial to such a degree that it resulted in a denial of due process. Appellant urges that, but for the introduction of this prejudicial testimony, the jury would not have returned a guilty verdict. We find the admission of the evidence prejudicial and reverse.
The objectionable testimony involves two witnesses. Judy Spangler, an employee of the State Attorney's office, was allowed to testify that approximately three to four weeks prior to the murder the victim had told her that, "He wanted something to keep his wife away from him, that he was afraid that she was going to blow up his camper, and that she was around him twenty-four *1021 hours a day." On cross-examination, she testified that it was her opinion the deceased was in fear of the appellant.
The other witness, Gary Hood, a friend of the deceased victim, was allowed to testify that he knew the deceased fairly well, and that approximately one month prior to the victim's death, the victim told him that he was afraid of the appellant. He also testified that the victim "thought his wife would shoot him with a pistol" and that she always had a pistol with her which she was not afraid to use. On cross-examination, Hood further testified that the deceased victim told him that he didn't park his camper (in which he was living) in the same place so that he did not establish a pattern which his wife could follow. On redirect examination, Hood testified that the deceased told him that he did not want to establish a pattern because he was afraid his wife would send "her boys" out to find him.
Following the testimony of Mr. Hood, the court instructed the jury that Mr. Hood's testimony was to be considered
... only as evidence of Mr. Kennedy's state of mind at the time he made any statements ... it is not evidence that a shooting in fact occurred or evidence that Mrs. Kennedy was involved in Mr. Kennedy's death. It is only evidence of the state of mind Mr. Kennedy had at the time he talked to Mr. Hood.
No limiting instruction was given regarding the testimony of Judy Spangler.
The statements which a murder victim purportedly makes to a third party, prior to a fatal incident, to the effect that the defendant intended to kill the victim in the future, are in almost all cases inadmissible as hearsay. See, State v. Wauneka, 560 P.2d 1377 (Utah 1977); People v. Ireland, 70 Cal.2d 522, 75 Cal. Rptr. 188, 450 P.2d 580 (1969); State v. Kump, 76 Wyo. 273, 301 P.2d 808 (1956). While such statements are not always inadmissible, the courts have found few exceptions to the general rule of inadmissibility. A good discussion of some of these notable exceptions can be found in United States v. Brown, 490 F.2d 758, 767 (D.C. Cir.1973), where the Court stated:
While there are undoubtedly a number of possible situations in which such statements may be relevant, the courts have developed three rather well-defined categories in which the need for such statements overcomes almost any possible prejudice. The most common of these involves defendant's claim of self-defense as justification for the killing. When such a defense is asserted, a defendant's assertion that the deceased first attacked him may be rebutted by the extrajudicial declarations of the victim that he feared the defendant, thus rendering it unlikely that the deceased was in fact the aggressor in the first instance. Second, where defendant seeks to defend on the ground that the deceased committed suicide, evidence that the victim had made statements inconsistent with a suicidal bent are highly relevant. A third situation involves a claim of accidental death, where, for example, defendant's version of the facts is that the victim picked up defendant's gun and was accidentally killed while toying with it. In such cases the deceased's statements of fear as to guns or of defendant himself (showing that he would never go near defendant under any circumstances) are relevant in that they tend to rebut this defense. Of course, even in these cases, where the evidence is of a highly prejudicial nature, it has been held that it must be excluded in spite of a significant degree of relevance.
It is significant that in those situations where such statements by the victim were admissible, the basis for admissibility was the relevance of the statement to an issue of proof. In this case, none of the purposes of admissibility cited in Brown, supra, are present. The appellant has not alleged self-defense, suicide, accident or any other defense where the prior threats made against the deceased, or the deceased's state of mind, are relevant to the defense asserted.
Succinctly stated, the state of mind exception to the hearsay rule allows the admission of extrajudicial statements to *1022 show the state of mind of the declarant at the time the statement is made if that is at issue in the case. Under the facts of this case, the victim's state of mind was not at issue. Although the testimony of Spangler and Hood was allegedly admitted for the purpose of demonstrating the declarant's state of mind, its real effect was to show the truth of its content, i.e. that the appellant had a preconceived design to kill the deceased. The State made no attempt to rely upon the felony murder rule to establish premeditated design. Rather, the State attempted to show that the murder was the result of a fully-formed, conscious intent on the part of the appellant to kill her husband.
Because premeditation is an essential element of the crime for which appellant was convicted, the introduction of inadmissible hearsay testimony to prove this element was clearly erroneous. Even though such evidence may have a degree of relevance, if its probative value is outweighed by its prejudicial effect, then it must be excluded. See, Brown, supra. The only proper purpose for which the deceased's statements could have been admitted was to show the deceased's state of mind, a factor clearly irrelevant to the issues at trial. See, Van Zant v. State, 372 So.2d 502 (Fla.1st DCA 1979).
We also reject the State's argument that the statements of the deceased qualify as res gestae utterances and are thus excepted from the hearsay rule. As defined in Smith v. State, 311 So.2d 775, 777 (Fla.3rd DCA 1975),
The term res gestae includes words, declarations, and acts so closely connected with a main fact in issue as to constitute a part of the transaction.
The statements made by the deceased prior to his death were simply too remote in time to constitute res gestae utterances. The statements lacked the sort of substantial contemporaneity necessary to bring them within the res gestae exception to the hearsay rule.
We now focus on the cumulative, prejudicial effect of these statements in light of the quantum of other admissible evidence tending to establish the guilt of the appellant. The State primarily relied upon the testimony of two other participants in the murder and that given by the appellant. These other participants were the appellant's son by a previous marriage and a friend of his, both of whom were charged with murder in the first degree and both of whom had been allowed to enter pleas of guilty to the lesser included offense of murder in the second degree. Neither had been sentenced at the time of trial; thus, their testimony was of questionable credibility.
In relating a rather bizarre sequence of events leading up to the victim's demise, the appellant's son and his friend, David McDonald, each testified that the appellant planned and participated in the execution of the murder. The substantial difference in their testimony concerned who actually committed the murder. The appellant's son thought McDonald had pulled the trigger, whereas McDonald testified that appellant fired the fatal shots. McDonald did, however, admit to striking the victim on the head with a crowbar prior to the shooting. The appellant, testifying on her own behalf, stated that she had no intention of killing her husband on the night of the murder and that she merely met with him to discuss some financial affairs. She further testified that she was not present when the fatal shots were fired and that she observed McDonald carrying a gun immediately after she heard the shots. She acknowledged that she had not notified the police on the evening of the murder, and in fact, told the police that she had not been with her husband on the day of the murder. Thus, her testimony was also suspect.
Although we are mindful that the testimony of the other two participants in this crime clearly inculpated the appellant, it is also of significance that the severity of the sentence to be imposed against these culprits in all likelihood depended upon the nature of their testimony. Furthermore, we find limited value in the "curative" instruction given by the court after Hood testified regarding statements made to him *1023 by the deceased. Notwithstanding such an instruction, there was still an ever present danger that the jury was unable to confine its deliberations to the purpose of the testimony sanctioned by the court. Even that purpose was improper in this case.
We share the conclusion reached by the court in People v. Ireland, supra, 450 P.2d at 585:
The error was prejudicial. The statement in question not only reflected Ann's state of mind at the time of the utterance; it also constituted an opinion on her part as to conduct which defendant would take at a future time. On the basis of this hearsay opinion the jury might reasonably have inferred that Ann several hours before the homicide, had concluded that defendant had then formed the intention to kill her. The next logical inference, to wit, that Ann's assessment of defendant's then intention was accurate and defendant had in fact formed an intention to kill several hours before the homicide ... strikes directly at the heart of the defense. The judgment, must therefore, be reversed.
The Court went on to say that:
The quantum of prejudice ... is highest when the circumstantial facts in the statement are intimately related to the issue to be proved. In the context of homicide cases, such as this, it is clear that where the improper purpose for which the jury might consider the evidence bears closely on the central question of defendant's guilt or innocence there is less likelihood that the jury will confine itself to its proper realm. Here the functional utility of the limiting instruction becomes most doubtful. This is the lesson of the famous case Shepard v. United States, 290 U.S. 96, 54 S.Ct. 22, 78 L.Ed. 196 (1933).
See also, State v. Wauneka, supra.
In determining whether the improper admission of evidence was prejudicial error, a determination must be made of the probable impact of the improper evidence on the minds of an average jury. See, Schneble v. Florida, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972). We hold this impact to be of great proportion in this case.
The facts here indicate more than a reasonable probability that the improperly admitted evidence contributed to the verdict. The average jury could have found the State's case significantly less persuasive had the testimony of the deceased's mortal fear of the appellant been excluded. The impact of this testimony on the jury was that the deceased feared that he might be shot and killed by the appellant. A few weeks after he vocalized these fears, he was shot and killed. Therefore, the jury probably concluded that the shooting and killing was planned and performed by the appellant. The appellant was thus accused of the premeditated murder of the deceased by the deceased's own words from beyond the grave. With no opportunity to contradict or rebut the words of the dead victim, the appellant was denied due process of law as mandated by the United States and Florida Constitutions.
We are also mindful of the admonition set forth in Coggins v. State, 101 So.2d 400, 403 (Fla.3rd DCA 1958) which states:
Not all errors are prejudicial and unless such errors go to the fundamental rights of the accused to a fair and impartial trial or deprive him of due process, a conviction otherwise free of error should not be disturbed. It is true that an accused is clothed with a cloak of innocence from the day of his indictment until a jury has returned a verdict of guilty against him; nevertheless, once the cloak has been swept away by an adjudication of guilt after a fair and impartial trial in accordance with due process, the rights of the State and society require that such conviction should not be lightly set aside by an appellate court.
Nevertheless, we feel the error to be so prejudicial as to warrant a new trial.
REVERSED and REMANDED for a new trial.
MAURICE M. PAUL, Associate Judge, concurs.
SPENCER C. CROSS, Associate Judge, dissents without opinion.