493 P.2d 617

STATE of Utah, Plaintiff and Respondent,

v.

Raymond Guy MURPHY, Defendant and Appellant.

No. 12451.

Supreme Court of Utah.

Feb. 4, 1972.

Phil L. Hansen & Associates, Salt Lake City, for defendant-appellant.

Vernon B. Romney, Atty. Gen., David S. Young, Asst. Atty. Gen., Salt Lake City, for plaintiff-respondent.

HENRIOD, Justice:

Appeal from a first-degree murder conviction. Affirmed.

An abstract of the pertinent evidence most favorable to the State, fairly may be stated as follows: Defendant Murphy shot and killed one Floyd, which occurred under the following circumstances: At 5:00 a. m., August 20, 1970, Murphy called the number of a married girl friend with whom he had been intimate and over whom he and Floyd had argued. He told whoever answered the phone that the next time he saw Floyd, God would too. Prior thereto he had made numerous threats to kill the latter. Frightened, Floyd then borrowed a gun. At 10:30 a. m. Murphy bought a .22 pistol. Shortly thereafter he went to a tavern and had a beer. He gave the barkeep a bullet, asking the latter to tell Floyd he had six more like it. He went from there to a lounge for lunch. At noon Floyd entered the lounge through a rear door. Murphy jumped from a bar stool, hollered "Hey, Bill," and started shooting. After the second shot, which Murphy's counsel concedes had been fired, Floyd started shooting back, but the faster

gun had fatally wounded him. At the hospital he was pronounced dead. Murphy said he shot only after he saw a gun in Floyd's hand. Immediately after the skirmish, Murphy left for parts unknown.

Murphy, on appeal, urges that the court erred prejudicially in 1) its instruction to the jury with respect to the elements of second-degree murder, 2) its instructions on the extent of reflection and deliberation required to show first-degree murder, 3) its instruction on self-defense, particularly with respect to its availability though the killer struck the first blow, and 4) its failure to grant a mistrial when the prosecution questioned Murphy as to his right to remain silent on custodial questioning.

It is of some significance to note at this juncture that it is conceded in both briefs the following facts were true and hence uncontroverted: That at 5:00 a. m. Murphy called at his girl friend's home and threatened to kill Floyd. That same day Floyd borrowed a gun and Murphy bought one, all within a few hours. Murphy had threatened to kill Floyd on previous occasions. At noon Murphy jumped off a stool and fired two shots at Floyd, who then fired back, the two shots fired by Murphy killing Floyd. Then Murphy fled the scene.

It seems to us that the facts conceded by Murphy in themselves almost amount to proof of the commission of first-degree murder. Together with the other facts recited first hereinabove it would be made to appear almost that a second-degree instruction of the type asked for by defendant really was unnecessary, since such admitted and other admissible facts, if believed by the jury, constituted an "unlawful killing of a human being" under Title 76–30–1, Utah Code Annotated 1953, by a "wilful, deliberate, malicious and premeditated killing" of a human being, defined in Title 76–30–1 of said code.

■ As to 1) above with respect to elements of second-degree murder, counsel for defendant says that such murder either (a) was with intent to kill or (b) to do bodily harm, etc., reasoning that in not mentioning (a), the court "prevented the jury from returning a verdict of anything other than murder in the first degree if they found that at the time of killing the defendant had a specific design to kill, *even though it was not premeditated or deliberated.*" This is somewhat of a non sequitur since under Instruction 19, to which defendant did not object, and successfully couldn't have done, the jury was given eight elements that constituted murder, including those of *premeditation* and *deliberation,* plus an intention to kill. The fact that the jury found all elements to be true beyond a reasonable doubt, including the *premeditation* and *deliberation,* it would seem to have been inoculated against defendant's suggestion that the jury might

have found otherwise, which it did not do. In finding as they did, the veniremen were not duty-bound to canvass the second-degree instruction, which was conditioned on the failure of the jury to find all of the elements of a first-degree murder,—as reflected in the Instruction when the court said, *"In the event* that you find the defendant is not guilty of the crime of murder in the first degree under Instruction 19, you may *then* consider whether or not the defendant is guilty of . . . murder in the second degree." At this juncture, defendant's citation of State v. Trujillo [1] seems to fly in the teeth of such logic; since that case said that an instruction not including the alternative of "an intention to kill" as well as to do bodily harm, was erroneous. Although that case presents a difficult confrontation, it is not "virtually identical with the situation in the instant case" as counsel urges, nor does it stand exactly for what counsel accredits it,—but if it be assumed that it does, it has been tempered by State v. Matteri,[2] where this court in a unanimous decision, asked: "Could the jury . . . reasonably determine from the facts, that there existed an intent to kill and malice aforethought and yet not be convinced beyond a reasonable doubt that the State had made out *de-*

*liberation* and *premeditation?"* In that case it was urged that the court erred in failing to instruct on the possibility of second-degree murder when there was intent to kill. We believe that case harmonizes with the logic and reason contended for supra in this opinion. In addition and even assuming, arguendo, that the subject instruction was in error, we believe any such error to have been cured because the defendant did not (a) take exception to it,[3] (b) it has been modified somewhat by the Matteri case, supra, (c) the court in Instruction 19, told the jury that it had to find beyond a reasonable doubt that all eight elements of first-degree must be found before it could find defendant guilty of that offense, and (d) in any event, any error in the instruction was cured when the prosecutor, immediately after the instructions were given, told the jury that "the included offense of second-degree murder, you don't have to have pre-meditation" or "deliberation. You don't have to have the intent to kill, *but you may have the intent to kill."* [4]

As to 2): With respect to error in the instruction as to extent of reflection and deliberation, and failure to give defendant's requested Instruction 2 (which we be-

1. 117 Utah 237, 214 P.2d 626 (1950).

2. 119 Utah 143, 225 P.2d 325 (1950).

3. Although, concededly, under some circumstances the court can review such irregularities. State v. Poe, 21 Utah 2d 113, 441 P.2d 512 (1968); State v. Cobo, 90 Utah 89, 60 P.2d 952 (1936).

4. State v. Petralia, 118 Utah 171, 221 P.2d 873 (1950).

lieve was given in substance): The defendant urges that an erstwhile more or less stock instruction contained the objectionable statement that the intent and design to kill "must precede the killing by some appreciable space of time, *but the time need not be long*" and again that it *"need only be long enough for some reflection and consideration. It involves a choice to act or not when the time is sufficient for this, it does not matter how brief it is."*

■ Defendant relies heavily on State v. Anselmo,[5] which we believe to be inapropos here because in that case the instruction provided that there need be no appreciable time between intent and act and that it could be instantaneous, whereas in the instant case the court instructed that the intent to kill must have been formed before the blow was struck and "must precede the killing by some appreciable space of time," and that "in the commission of the offense 'deliberate' means in a self-controlled state and *not in a sudden passion*" and that it connotes a weighing of motives, its consequences, its nature and all other circumstances. The distinction is obvious, and anyway, we think the case of State v. Warwick [6] is dispositive on this point.

■ As to 3): As to one striking the first blow being entitled to claim self-defense and an instruction thereon: The

trial court instructed on self-defense ·in words substantially as found in the justifiable homicide statute (Title 76–30–10, Utah Code Annotated 1953), except that the instruction in stating the rights and duties of one attacking, used the words "original assailant" while the statute stated "assailant." The defendant says the difference is prejudicial as giving the jury the impression that an "original assailant" could never have a claim of self-defense. The difficulty is that the defendant here shot first and *was* the "original assailant" and we discern no facts reflected in the record that could be interpreted that he acquired a claim of self-defense thereof save his own self-serving gratuity that the victim drew first, a fact that is not otherwise supported,—a fact that the jury need not have had to believe. The error complained of is technical at best under the admitted and other facts adduced, and at best we believe that conceding the instruction may have been erroneous, it was not prejudicial.

■ As to 4): That the court erred in allowing the prosecution to question defendant as to his right to remain silent while under custodial interrogation: It appears that defendant was given the Miranda warning at time of arrest, and again when questioned by a detective, after which he admitted the offense, took the former to the scene and helped in a search

5. 46 Utah 137, 148 P. 1071 (1915).

6. 11 Utah 2d 116, 355 P.2d 703 (1960).

for empty shells. At no time did he claim self-defense until trial, when he did, resulting in his cross-examination for impeachment purposes. We think that no prejudicial error was committed here. (All emphasis added.)

CALLISTER, C. J., and TUCKETT and ELLETT, JJ., concur.

CROCKETT, J., concurs in the result.