513 P.2d 422

STATE of Utah, Plaintiff and Respondent,

v.

Gavino Joe VALDEZ, Defendant and Appellant.

No. 12952.

Supreme Court of Utah.

Aug. 24, 1973.

7. See F.M.A. Fin. Corp. v. Build, Inc., 17 Utah 2d 80, 404 P.2d 670 (1965).

Bettie J. Marsh, William D. Marsh, Ogden, for defendant-appellant.

Vernon B. Romney, Atty. Gen., Robert B. Hansen, William T. Evans, Randolph S. Collins, Asst. Attys. Gen., Salt Lake City, for plaintiff-respondent.

CALLISTER, Chief Justice:

Defendant appeals from his conviction by a jury of the crime of first-degree murder; the jury recommended leniency, and defendant was sentenced to a term of life imprisonment.

There is no dispute that defendant entered the Post Lounge in Ogden, Utah, at about 12:30 a. m. on August 21, 1971, walked up to the booth where his former wife, Ida Berniece Valdez, was seated with her companions, held his gun with both hands and fired it seven times into her body, and then walked hurriedly away, without speaking a . word. Defendant pleaded not guilty and not guilty by reason of insanity.

The defense introduced evidence to prove that defendant had consumed a quart plus one half of a six pack of beer during the afternoon and early evening preceding the shooting. Defendant further ingested a tablet called "Purple Haze," an alleged dosage of LSD, at approximately 7:00 p. m. Defendant's psychiatric expert testified that with defendant's personality characteristics and the effects of LSD on his impulse controls, defendant, although able to understand the nature and consequences of his act, would be unable to control his actions. Defendant further adduced evidence to show the rejection, fear and frustration he experienced, which allegedly turned to rage upon his encounter with his ex-wife and resulted in her death. The defendant testified that he had no memory of shooting the victim; he recalled walking into the establishment, observing a friend of his former wife, and his struggling on the floor.

The prosecution introduced evidence indicating statements made by the defendant following the incident and the observations of witnesses of defendant's demeanor. The psychiatric testimony introduced by the State indicated that defendant was responsible for his actions at the time of the shooting and that he was not unable to control his actions but was unwilling to do so. Evidence was adduced which indicated that defendant had threatened to kill his wife on two occasions in the late spring and early summer of 1971. On the Wednesday prior to the occurrence, de-

fendant injured his former wife's leg by slamming a car door on it. On the night of the homicide, defendant went to the victim's home twice at approximately 10:00 p. m. and 12:00 midnight, and he appeared angry to the baby sitter, who informed him that his former wife was absent.

Following the shooting, defendant was restrained by other occupants in the lounge; he stated to them that he had done it and that he wouldn't try to get away; and that he'd get the gas chamber for sure. Upon the arrival of the police, he proclaimed that they didn't have to ask, that he'd shot her. On his way to the police station, defendant volunteered that he'd tried to get the children but she wouldn't give them to him. Defendant exclaimed: "Oh God, I hope she dies." While riding in the elevator to the jail, a trustee inquired as to defendant's offense, the police officer replied that defendant was suspected of shooting his wife five times. Defendant interjected that if they would check his gun, they'd find seven empty shells.

█ On appeal, defendant contends that the trial court's instructions to the jury distinguishing between first- and second-degree murder were improper and prejudicial. In separate instructions, the elements of first- and second-degree murder were set forth. One of the elements listed in the second degree was that the said killing

was felonious. In another instruction, "felonious" was defined as proceeding from an evil heart or purpose, done with a definite intention to commit a crime. Defendant urges that the inclusion of this element in the second-degree murder instruction discouraged the jury from considering the lesser offense. Furthermore, defendant postulates that the exclusion of this element in the first-degree murder charge would lead the average juror to believe that the absence of proof of an intent to commit a crime would place the offense committed in the first degree rather than murder in the second degree.

Implicit within defendant's argument is the assertion that the instruction for second-degree murder appeared to require more reprehensible conduct to fulfill the elements than for the first-degree murder charge. This contention is without merit, particularly when the instructions are construed in their entirety. Instruction No. 12 clearly and specifically outlined the elements of first-degree murder, including the specifications that the killing must be unlawful, wilful, deliberate, with malice aforethought, premeditated, and the result of a specific intention on the part of the defendant to take the life of the victim. In No. 15, the court instructed the jury that if it concluded that the State had not proved that defendant was guilty of murder in the first degree beyond a reasonable

**58**

doubt *then* it should determine whether he was guilty of murder in the second degree.

▇ In State v. Murphy,[1] the defendant contended that the instruction for second-degree murder was so worded that the trial court prevented the jury from returning a verdict of anything other than first-degree murder. This court explained that the fact that the jury found all of the elements to be true beyond a reasonable doubt, including the premeditation and deliberation would seem to negate the defendant's suggestion that the jury might have found otherwise. Furthermore, since the veniremen found as they did, they were not duty bound to canvass the second-degree instruction, which was specifically conditioned on the failure of the jury to find all of the elements of first-degree murder. In State v. Gallegos [2] this court reiterated the general rule that under ordinary factual situations where a jury finds the defendant guilty of a greater offense, the giving of an erroneous instruction on a lesser offense is not deemed prejudicial.

In the instant case, a review of the record reveals not only that defendant failed to take exception to the challenged instructions, but that the instructions, when all of them are considered together, clearly specified the requisite distinctions between first- and second-degree murder.[3]

▇ Defendant contends that the trial court erred in admitting the statements he made to the police while he was physically restrained and had not yet been apprised of his constitutional rights. When the police arrived at the scene, the defendant was being restrained by spectators. The police handcuffed defendant, searched him, and assisted him from a prone to a standing position. As the officer reached into his pocket to procure his "Miranda Warning" card and to read the defendant his rights, defendant volunteered: "You don't have to ask. I shot her!"

Defendant contends that at the moment he made the statement he was deprived of his freedom of action in a significant way, and since he had not received the warning, his statement is inadmissible.

The authority upon which defendant relies [4] does not proscribe the admission of a voluntary statement of a criminal defendant in custody, which was not made in response to any process of interrogation initiated by the police or by someone acting as an agent or instrumentality of the police.[5]

1. 27 Utah 2d 98, 493 P.2d 617 (1972).

2. 16 Utah 2d 102, 396 P.2d 414 (1964).

3. State v. St. Clair, 5 Utah 2d 342, 301 P.2d 752 (1956).

4. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966).

5. State v. Guerrero, 29 Utah 2d 243, 507 P.2d 1029 (1973); State v. Moraine, 25

Defendant urges that the evidence was insufficient to sustain a conviction of murder in the first degree as a matter of law. Specifically, defendant argues that reasonable men could not be persuaded beyond a reasonable doubt that the death of the victim was caused by the wilful, deliberate, malicious and premeditated action of the accused. Defendant contends that there was no evidence to establish that he had knowledge of the presence of his former wife in the Post Lounge, that his encounter with her was by chance, thus negating any opportunity for deliberation and premeditation.

: . . Murder in the first degree requires a wilful, malicious and premeditated killing, i. e., the fatal blow must be struck after one deliberately and premeditatedly forms a specific intention or design to kill. The time necessary to premeditate and deliberate need only be long enough for some reflection and consideration of the matter; it involves a choice to kill or not to kill. When the time is sufficient for this, it matters not how brief it is. The time required for premeditation and deliberation is a question of fact to be determined by the jury. The facts and circumstances by

their very nature may show premeditation, deliberation and malice aforethought. Direct evidence of a deliberate and premeditated purpose to kill is not required; the elements of deliberation and premeditation may be inferred from proof of such facts and circumstances as will furnish a reasonable foundation for such an inference.[6]

■ From the facts adduced at trial, the jury could reasonably infer that the defendant went in search of the victim for the specific purpose of killing her. The jury was not compelled to believe that defendant wandered into the bar seeking companionship and that the encounter was unexpected. There were ample facts to support the jury's determination.

Defendant further suggests that the rage engendered by the sight of his ex-wife combined with his inability to control his response by his ingestion of alcohol and drugs made it extremely doubtful that he would have the ability to premeditate and deliberate. A similar argument was urged in State v. Rivenburgh,[7] wherein this court reviewed the record of the testimony concerning defendant's behavior before and after the killing and determined that as a matter of law it could not be stated that

Utah 2d 51, 475 P.2d 831 (1970); State v. Scandrett, 24 Utah 2d 202, 468 P.2d 639 (1970).

6. State v. Gee, 28 Utah 2d 96, 99–100, 498 P.2d 662 (1972).

7. 11 Utah 2d 95, 102, 104, 355 P.2d 689 (1960).

**60**

defendant did not intend or plan to kill the deceased; and, therefore, the trial court properly submitted to the jury the elements of first-degree murder. This court further observed that the defense as to the effect of drugs on defendant's mental condition was placed before the jury under proper instructions by the court; so defendant had the full benefit of his defense for the jury to determine. The jury chose not to believe it, as in the instant case; and in both instances the evidence amply supported the verdict.

Defendant further contends that the remarks of the prosecution in rebuttal to defendant's closing argument were improper, prejudicial, and constituted reversible error. Defendant failed to assert an objection during the course of the argument, and the trial court was deprived of the opportunity to determine the matter or caution the jury. However, Instruction No. 7 provided an admonition to the jury that they should consider only such evidence as has been admitted in the case; they should neither consider nor be influenced by any statements of counsel as to what the evidence is unless it is stated correctly, nor by any statement of counsel of facts not shown in evidence, if any such has been made.

Counsel for both sides have considerable latitude in their arguments to the jury; they have a right to discuss fully from their standpoints the evidence and the inferences and deductions arising therefrom. The test of whether the remarks made by counsel are so objectionable as to merit a reversal in a criminal case is, did the remarks call to the attention of the jurors matters which they would not be justified in considering in determining their verdict, and were they, under the circumstances of the particular case, probably influenced by those remarks. The determination of whether the improper remarks have influenced a verdict is within the sound discretion of the trial court on motion for a new trial. If there be no abuse of this discretion and substantial justice appears to have been done, the appellate court will not reverse the judgment.[8]

In the instant action it is sufficient to say, without belaboring the issue with a blow-by-blow account of the forensic battle of counsel, that the prosecutor's rebuttal was in direct reply to the theory advanced by defense counsel in his final argument and that these remarks were within the range of reasonable inferences which could be drawn from the evidence.

8. State v. Gregory, 108 Ariz. 445, 501 P.2d 387 (1972); Davis v. State, Alaska, 501 P.2d 1026 (1972); Battle v. State, Okl.Cr., 478 P.2d 1005 (1970); State v. Gonzales, 105 Ariz. 434, 466 P.2d 388 (1970); People v. Bain, 5 Cal.3d 839, 97 Cal.Rptr. 684, 489 P.2d 564 (1971).

The judgment of the trial court is affirmed.

HENRIOD, ELLETT and TUCKETT, JJ., concur.

CROCKETT, Justice (concurring).

I concur. But I note my reservation about the statement that the jury "were not duty bound to canvass the second-degree instruction." It seems to me that in some circumstances it could be given a misleading application inconsistent with the many admonitions in the decisions of this and other courts: that the jury should read and consider all of the instructions together. The difficulty is pointed up in the instant decision itself, which in the very next paragraph states that "the instructions, when all of them are considered together, clearly specify the requisite distinctions between first- and second-degree murder." This I believe is the correct and adequate ground for the instant decision. However, I also note my agreement with the statement from the Gallegos case, (footnote 2, main opinion) "that under *ordinary factual situations* where a jury finds the defendant guilty of a greater offense, the giving of an erroneous instruction on a lesser offense is not deemed prejudicial." This makes allowance for the fact that there may be some situations where the giving of an instruction on a lesser offense could be so erroneous and confusing as to impel a conclusion that the defendant had not had a fair trial.