**STATE of Utah, Plaintiff and Respondent,**

v.

**William Steven WISWELL, Defendant and Appellant.**

**No. 16758.**

Supreme Court of Utah.

Dec. 4, 1981.

---

G. L. Fletcher, Salt Lake City, for defendant and appellant.

David L. Wilkinson, Atty. Gen., Salt Lake City, Craig L. Barlow, Asst. Atty. Gen., for plaintiff and respondent.

GOULD, District Judge:

Defendant was convicted of aggravated robbery, two counts, and appeals.

Defendant's three cousins, Scott, Donnie and Vicki Elliott, all entered the Hideout Lounge in Salt Lake City, between 12:30 and 1:00 p. m. They were joined later by defendant, who is considerably younger, who testified that he had waited outside in the car for about one and one-half hours before joining his cousins in the lounge. They drank for some time, and then left, allegedly to pick up a check belonging to one of the cousins. All returned to the Hideout later, and after drinking more beer, Scott drew a gun and commenced a robbery of the bartender. During the course of the robbery, defendant was told by Scott to get behind the bar and act like a bartender. Two women, who had gone out for some food, reentered while defendant was behind the bar, and inquired what he was doing there. Apparently sensing that all was not well, one of the returning women asked the defendant what he was doing, and upon receiving an answer to the effect that he was "in charge," she pushed him in an effort to get to the telephone to summon police. At this point, Scott, who had shepherded the other victims into another area of the lounge, returned, gun in hand, with a woman victim as hostage. At this point, one of the women who had been out for food attempted to flee, and was tripped or knocked to the floor by defendant. Defendant claims he was ordered to "stop her" by the gun-wielding robber.

Defendant and cousins eventually left the lounge, and were apprehended in a vehicle after a police chase which was made possible by two passers-by FBI agents.

Defendant contends that he was an unwilling participant in the events, about which he had no prior knowledge or notice, and that his actions were taken at the direction of the gun-wielding robber.

After being placed under arrest, defendant was given warnings in accordance with

the *Miranda* decision, and chose to remain silent.

During the trial, the prosecutor put questions to the defendant's custodial officer following the arrest, as follows:

Q. Do you recall how he was dressed when you saw him first?

A. Yes. He had blue, straight-legged Levis and I believe it was high top black boots and he did not have a shirt.

Q. What happened after he was placed in the patrol car?

A. I attempted to read him his rights under the *Miranda* ruling from a card—

MS. FLETCHER: I am going to object, Your Honor. May I have a motion?

Defendant's objection was sustained, and the question and answer stricken. A motion for mistrial was thereupon made by defendant, and denied by the court.

Later, while examining the same witness, the prosecutor put the question:

During this period of time did the defendant say anthing to you with reference to the subject being forced—

(The reference is to a time following defendant's arrest.)

Defendant's objection was sustained.

Later, the prosecutor recalled the same witness and put the question:

During any period of time when he was with you and sequestered from either voice or physical contact with the other defendants, did he tell you at any time that he was—whether or not he was coerced or forced or threatened—

Defendant's objection was again sustained.

In closing argument, the prosecutor stated:

When they left and they are leaving on the run, did he stay behind to assist the victims, to confront the police, to report to them the true state of facts about what his position was, his proposition—

Defendant's objection was sustained, and admonition by the court to the prosecutor followed.

The prosecutor later argued to the jury:

I suggest to you that this defendant was in the same frame of mind and that frame of mind continued after his arrest.

I asked the officer who drove him to those places what the defendant said. He didn't tell the officer that he was an unwilling participant.

Defendant objected and reserved a motion for mistrial, but the court ruled the argument to be proper.

The issue therefore presented is whether this use of a defendant's post-arrest silence is a violation of a defendant's right to remain silent; and secondarily, if it is a violation, was the prosecutor's conduct prejudicial to the defendant's right to a fair trial.

The case that appears to be the controlling case is *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). Even if it could be validly argued that defendant's objection and the court's attempt to cure the matter by striking and admonition were effective, this cannot be said about prosecutor's comments during his final argument. The continued attempts by the prosecutor to put the defendant's silence before the jury after his having been advised of his right to remain silent amounts to prosecutorial misconduct.

The references to defendant's silence are fundamental error, which could have affected the result and are therefore prejudicial. The reasons for extending this protection are adequately discussed in *Doyle, supra,* and need not be repeated here.

Reversed and remanded for new trial.

STEWART, HOWE and OAKS, JJ., concur.

HALL, Chief Justice (dissenting):

I do not view the case of *Doyle v. Ohio*[1] as dispositive of the issue in this case because *Doyle* is distinguishable on its facts.

1. 426 U.S. 610 (1976).

In *Doyle*, defense counsel's objections to the questions posed to defendant about his post-arrest silence were *overruled* by the court and the answers came in, whereas in the instant case, the objections were promptly *sustained*, and the only answer that came in was stricken from the record and the jury was admonished to disregard it.

*Doyle* is further distinguishable by reason of the fact that the court did not rule as it did without first observing: "The State has not claimed that such use [of defendant's post-arrest silence] in the circumstances of this case might have been harmless error." In the instant case, the State points to the substantial evidence of defendant's guilt to support its contention that the mere reference to defendant's post-arrest silence constitutes nothing more than harmless error.

As to the claim of error occasioned by the prosecutor's closing argument, his comments fall well within the usual latitude afforded both sides in their arguments to the jury. Counsel have the right to discuss fully from their standpoint the evidence, inferences and deductions to be drawn therefrom,[2] and the determination whether the improper remarks of counsel during arguments to the jury have influenced a verdict lies within the discretion of the trial court.[3]

The record reflects facts and circumstances giving rise to substantial evidence of guilt. Further, the record supports the conclusion, beyond a reasonable doubt, that defendant was afforded a fair trial. Any error that crept in at trial does not rise to the level of prejudicial, reversible error. As stated by a unanimous Court in *State v. Hodges* :[4]

> [T]here should be no reversal of a conviction merely because of error or irregularity, but only if it is substantial and prejudicial in the sense that in its absence there is a reasonable likelihood that there would have been a different result.

I would affirm the conviction and judgment of the trial court.

---

**2.** *State v. Valdez*, 30 Utah 2d 54, 513 P.2d 422 (1973); *State v. Bautista*, 30 Utah 2d 112, 514 P.2d 530 (1973).

**3.** *Id.*

**4.** 30 Utah 2d 367, 517 P.2d 1322 (1974).