**STATE of Utah, Plaintiff and Respondent,**

v.

**Curtis R. SMITH, Defendant and Appellant.**

**No. 18839.**

Supreme Court of Utah.

May 10, 1985.

---

David L. Mower, Salt Lake City, for defendant and appellant.

David L. Wilkinson, Atty. Gen., Dave B. Thompson, Asst. Atty. Gen., Salt Lake City, R. Don Brown, Co. Atty., Richfield, for plaintiff and respondent.

DURHAM, Justice:

Defendant Curtis R. Smith appeals from a conviction of rape, forcible sodomy, and burglary in violation of U.C.A., 1953, §§ 76–5–402 (Supp.1981), 76–5–403 (Supp. 1981), and 76–6–202 (1978), respectively. We affirm.

In the early morning of March 28, 1982, the victim was awakened by a noise in her trailer home in Monroe, Utah. She arose, walked out of her bedroom, and found that the back door of the trailer was open. She reached for the telephone and then saw a man standing in the hall. She showed him the light from the telephone in her hand and threatened to call the police. In response, the man slapped her in the face, knocked the phone out of her hand, pushed her to the floor, and began to remove her robe. At that point, the victim's young son came into the room; she told him to go back to his bedroom, which he did. The man then performed cunnilingus on the victim, forced her to perform fellatio on him, and raped her. She testified that intercourse lasted about five minutes, that the assailant did not ejaculate, and that during intercourse she engaged him in conversation in an effort to discover something about his identity. During that conversation, the man disclosed a number of facts about himself, including the following: his name was Curtis; he was 26 years old; he had been up in the hills (in response to the victim's stating that he smelled like a bonfire and asking if he had been at a party somewhere); he currently lived in Monroe, Utah; he had been living in San Diego and had recently returned to Monroe; he had served time for armed robbery; he was on probation; and he had worked on oil rigs, but was currently unemployed.

When a vehicle entered the trailer court, the assailant jumped up, looked at a digital watch he was wearing, and left, after telling the victim he would be back the following night. After he left the trailer, the victim called a friend, who came over immediately and called the police at her request. The victim gave them a general description of her assailant. She said he was approximately 6'2" tall, with curly hair and a full beard; he was wearing Levis, a hooded sweatshirt, and a digital watch that lit up when a button was pressed. She was unable, however, to describe his face, as it had been too dark in the trailer for her to see it clearly. She was consequently unable to make any eyewitness identification of defendant at trial.

The evidence presented at trial established that defendant was 26 years old and unemployed, that he had lived near San Diego until he moved back to Utah shortly before this offense, that he had been arrested and incarcerated for attempted robbery as a juvenile (although he had told his Utah probation officer that the offense was armed robbery), that he had been on probation and parole, and that he had been at a bonfire party on the night the victim was raped. There was further evidence which indicated that defendant was wearing Levis and a hooded sweatshirt that night and that he had dropped a friend off in Monroe shortly before the time the rape occurred. The State also presented evidence that the tire treads on defendant's vehicle were similar to fresh tire tracks found outside the victim's trailer and that defendant was wearing a digital watch when arrested.

At trial, defendant presented evidence that the results of the State's analysis of pubic hair samples taken from the victim showed no foreign hairs that matched the hair sample taken from defendant.

Defendant was initially represented by court-appointed counsel. Defendant then retained private counsel, who represented him at trial. On appeal, defendant is represented by court-appointed counsel and has also submitted a *pro se* brief. Defendant's brief raises ten separate claims for review, while his counsel's addresses only two. We will treat all of defendant's claims, although we will consolidate our discussion of those that are related.

■ Defendant claims that there were defects in the information by which he was charged and that the district court therefore lacked jurisdiction to try him on the basis of that information. These objections were not raised prior to trial, however, and as we have recently stated, failure to make timely objection to defects in the information constitutes a waiver. *State v. Lairby,* Utah, 699 P.2d 1187, 1193 (1984).

■ In his brief, defendant asserts that he was denied access to a taped statement allegedly made by the victim on the morning the rape occurred and that such denial may have prejudiced his defense, although he does not specify the nature of any such prejudice. The record shows that no request was made for the statement until several months *after* defendant's trial and sentencing; consequently, defendant may not now complain of its unavailability. *See State v. Sparks,* Utah, 672 P.2d 92, 94 (1983).

■ Additionally, defendant claims that the trial court refused to allow a defense witness to appear. Defendant asserts that this witness would have impeached the complaining witness. There is nothing in the record to substantiate this claim. The

record does contain a subpoena that was served on the witness identified by defendant, but the transcript of the trial and of all hearings before the judge contains no mention of that witness, no indication of an intent to call the witness, and no refusal by the court to allow the witness to appear. "This Court simply cannot rule on a question which depends for its existence upon alleged facts unsupported by the record." *State v. Wulffenstein,* Utah, 657 P.2d 289, 293 (1982), *cert. denied,* 460 U.S. 1044, 103 S.Ct. 1443, 75 L.Ed.2d 799 (1983) (citations omitted).

■ Defendant also raises two claims relating to his right to a speedy trial. First, he claims that more than ten days elapsed between his arraignment and the preliminary hearing in his case, in violation of U.C.A., 1953, § 77–35–7(c) (1982). Although it is true that the ten-day requirement was not met here, the statute also provides that the magistrate may extend the time period for good cause. In this case, the record shows that the court waived the ten-day period in order to give counsel on both sides time to prepare, and the hearing date was set for April 19, 1982, thereby extending the statutory period for only nine days. Defendant made no objection to and does not appear to have been prejudiced in any way by the short delay.

■ Defendant also claims that he was prejudiced by the fact that his trial was held almost six months after his arrest. The record indicates that at the time of his arraignment in district court on April 28, 1982, defendant, who was present with counsel, waived his right to a speedy trial. This Court has held that failure to assert the right to a speedy trial at the trial court constitutes waiver of the right to raise the issue here. *State v. Sparks,* 672 P.2d at 94.[1] Thus defendant is precluded from raising this issue on appeal.

1. Further, defendant retained private counsel prior to trial, and the record indicates that defendant's appointed counsel withdrew on July 15, 1982, four days prior to the original trial date. Although the record does not so indicate, presumably the trial date was extended to allow time for defense counsel to adequately prepare. *See State v. Knill,* Utah, 656 P.2d 1026, 1029 (1982) (whether right to speedy trial has been abridged depends on length of delay, reason for delay, defendant's assertion of the right, and prejudice to defendant).

Defendant next argues that the trial court erred in admitting evidence of defendant's conviction of an offense committed when he was a juvenile. Furthermore, he argues that the trial judge, having permitted that evidence to come in, should have cautioned the jury that the evidence could be considered only in connection with the issue of identity. Evidence of a prior criminal act to prove a material fact such as identity was admissible under Utah R. Evid. 55, the applicable rule at the time of the trial, 9B U.C.A., 1953 (1977). Thus the trial court's ruling on the admissibility of the evidence was correct. The trial court, however, should have granted counsel's request for a cautionary instruction, which request was made at the time the court ruled the evidence admissible. Rule 6, Utah. R. Evid., 9B U.C.A., 1953 (1977), provided, "When relevant evidence is admissible ... for one purpose and is inadmissible for another purpose, the judge upon request shall restrict the evidence to its proper scope and instruct the jury accordingly." Therefore, it was error not to give the limiting instruction. However, in light of the clear purpose of the evidence in the context of the trial, as well as the content of the court's instructions to the jury generally, the failure to include a special limiting instruction did not constitute prejudicial error. Where it appears that the outcome of a trial would not have been affected by the giving of a requested instruction, denial of the instruction is not prejudicial error. *State v. McCumber*, Utah, 622 P.2d 353, 359 (1980).

Defendant claims that the court erred in refusing to give a requested jury instruction on the lesser included offense of sodomy, as opposed to forcible sodomy. U.C.A., 1953, § 76-5-403 (Supp.1981). The defense argues that the element of consent, or lack thereof, distinguishes the two offenses and that the evidence presented at trial warranted an instruction on the lesser offense.

As defense counsel correctly points out, in *State v. Baker*, Utah, 671 P.2d 152 (1983), this Court clarified the standard for determining whether a trial court must give an instruction on a lesser included offense. In *Baker*, we held that when the defendant requests the instruction there are two requirements which must be met. The first is that the elements of the two offenses must be related and there must be some overlapping of the evidence required to prove the two offenses. *Id.* at 158–59. That requirement is clearly met here. The second requirement, however, is that "the evidence offered [provide] a 'rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense.'" *Id.* at 159 (quoting U.C.A., 1953, § 76-1-402(4) (1978)). In discussing that requirement, we said that the requested instruction should be given "when the evidence is ambiguous and therefore susceptible to alternative interpretations, and one alternative would permit acquittal of the greater offense and conviction of the lesser...." *State v. Baker*, 671 P.2d at 159.

Defendant argues that the evidence showed that the victim did not physically or verbally resist the assault and that the failure to so resist could reasonably be construed by the jury as consent. We disagree. The uncontroverted evidence was that an unknown man broke into the victim's home by removing a door and forcing a lock in the middle of the night. He knocked the telephone out of her hand, hit her hard enough to push her against a wall, pushed her to the floor, and forcibly removed her clothing. When she asked who he was, he replied that curiosity could kill a cat and that she should be very nice to him. She testified that she was frightened during the assault and that neither she nor the assailant spoke at the beginning. "[H]e just kept pushing my head, pulling my hair and ... pushing me and showing me what he wanted." In response to questions on cross-examination about her failure to actively resist, she said, "I didn't want to get hit again. No, I did not fight." The evidence of the blow to her face was apparent in the form of a fresh bruise described by the physician who examined her after the incident. In light of

this testimony, the trial judge was entirely correct in his determination that there was no evidence of consent and therefore no rational basis on which the jury could have acquitted defendant of the charged offense and convicted him of the lesser included offense.

■ Defendant's next claim is that by giving an instruction on expert witness testimony the trial court committed reversible error. This claim involves the testimony of Deputy Weaver, the investigating police officer, who took pictures and plaster casts of the tire tracks outside the victim's trailer and compared them to the tire treads on defendant's vehicle. Defendant argues that since the witness admitted on cross-examination that he did not consider himself to be "an expert in matching tires," the instruction on expert testimony should not have been given. Notwithstanding his disclaimer, Deputy Weaver testified that he had been in law enforcement for twelve years and that he had had one hundred and twenty hours of specialized training at an institute in Chicago in interpreting this kind of evidence. Further, defense counsel did not object to Deputy Weaver's qualifications or to his testimony, which was obviously intended to be expert testimony on this matter. Finally, the instruction itself clearly advised the jurors that they were not bound by any opinion expressed by an expert witness. The use of the instruction under these circumstances was not prejudicial error.

■ In his brief, defendant asserts that the evidence was insufficient to support the jury's verdict of guilty. Defendant argues that, except for the statements made by the assailant, there was no evidence identifying him as the perpetrator of the rape. In particular, he emphasizes the fact that the pubic hair sample taken from the victim contained no foreign hairs that could be identified as his. This evidence, however, was before the jury, and it was the responsibility of the jury to evaluate its significance. *See State v. Wulffenstein*, 657 P.2d at 292. This Court has stated that we will "overturn a conviction only when it is made to appear that reasonable minds must necessarily entertain a reasonable doubt of guilt, and we should only interfere when the evidence is so lacking and insubstantial that reasonable men could not possibly have determined guilt beyond a reasonable doubt." *State v. Anderton*, Utah, 668 P.2d 1258, 1262 (1983) (footnotes omitted). The evidence in this case regarding defendant's identity as the assailant was virtually overwhelming. The man who attacked this victim told her the following facts about his identity: his name was Curtis; he was 26 years old; he had been at a bonfire party earlier that night; he lived in the Monroe area, but had also lived in San Diego; he had been connected with a charge in California of armed robbery, had served time, and had been on probation; he worked occasionally on oil rig jobs, but was then unemployed. Added to these disclosures were the victim's physical observations of the man: his height; the clothing he was wearing, including a hooded sweatshirt that smelled of wood smoke and a digital watch; and his curly hair and bushy beard. Finally, there was strong evidence indicating the presence of a vehicle matching defendant's on the scene at the time of the offense. Every one of these numerous details serves to connect defendant with the assault. In fact, the only other possible explanation for such a wealth of identifying detail would be a conspiracy on the part of several State witnesses, including the victim, which would have required an inordinate amount of information about defendant's life or the outright coincidence of another assailant whose clothing, appearance, history, and life circumstances were identical to defendant's. There is virtually no indication anywhere in the record of any such conspiracy or coincidence, and the jury's verdict was entirely consistent with the evidence and all reasonable inferences that could be drawn therefrom.

■ We treat next defendant's assertion that he was burdened by ineffective assistance of counsel prior to trial. In particular, defendant claims deficiencies in his counsel's performance regarding the charg-

ing information, the request for the taped statement of the victim, and the speedy trial question. In *Codianna v. Morris,* Utah, 660 P.2d 1101 (1983), we established that a defendant must show both that there was in reality a deficiency in representation and that "any deficiency in the performance of counsel was prejudicial." *Id.* at 1109. Further, "prejudice means that without counsel's error there was a 'reasonable likelihood that there would have been a different result ....' " *Id.* (quoting *State v. Gray,* Utah, 601 P.2d 918, 920 (1979)). The record does not show that defendant's claims meet this standard.

 Finally, defendant claims that the prosecuting attorney made improper and inflammatory remarks in his closing argument that were prejudicial and require reversal. The remarks to which defendant objects are set forth below:

> It is very difficult and we're fortunate here today, ladies and gentlemen, that [the victim] did report it because, if we're ever going to get hold of this, we're all going to have to do our job, including juries, and it is not an easy job but it's got to be done because so many are not reported because of the difficulties. So concern yourselves with that when you go in there. *It's not Curtis Ray Smith that's on trial alone. It's our way of life, you and I, and how the public is going to perceive how the criminal law does its job. Do we go so far in determining that we don't punish an innocent man that we let too many guilty ones go or do we look at the cold hard facts and, even though the hammer of justice is about to fall, do our jobs, because, ladies and gentlemen, if we don't, we know what the result is going to be.*

(Emphasis added.) The remarks set forth above were clearly improper. They suggested that the jury had some obligation beyond the determination of the guilt or innocence of the defendant solely on the basis of the evidence introduced at trial. The prosecutor committed error in including them in his summation, and the trial

judge erred in failing on his own motion to caution the prosecutor and to remind the jury in explicit terms of the limits of its proper concerns. This Court has, however, adopted a two-part test for determining whether such remarks warrant reversal. "The test ... is, did the remarks call to the attention of the jurors matters which they would not be justified in considering in determining their verdict, and were they, under the circumstances of the particular case, probably influenced by those remarks." *State v. Valdez,* 30 Utah 2d 54, 60, 513 P.2d 422, 426 (1973). The remarks in this case met the first requirement of the test—they suggested that something other than the question of defendant's guilt was before the jurors, that they had some obligation beyond that of fact finding in this particular case. We are not convinced, however, that the second part of the test has been met here.

As we have pointed out earlier, this record contains substantial evidence of defendant's guilt. His primary theory at trial appears to have been that someone else committed the crime and impersonated him in the process, although he himself undermined that theory somewhat by cross-examining the victim on the question of consent. The jury was free to accept or reject that theory in its entirety. Because the two options were so distinct, this is not a case where the evidence presented a close question or offered several possible constructions of ambiguous evidence. The possibility that the jury would be influenced by the prosecutor's reference to irrelevant factors in his closing statement was therefore greatly diminished. Furthermore, in its instructions to the jury, the court included the warning that it must not consider as evidence any statement of counsel made during the trial and that "[t]he law forbids you to be governed by mere sentiment, conjecture, sympathy, passion, prejudice, public opinion or public feeling." *See State v. Creviston,* Utah, 646 P.2d 750, 754 (1982); *State v. Valdez,* 30 Utah 2d at 60, 513 P.2d at 426. This instruction, without more, clearly would have been inadequate to cure the defect caused

by the prosecutor's improper remarks. However, consideration of all the circumstances of this case, including the nature and extent of the evidence discussed above, leads us to conclude that the jurors were not "probably influenced by [the] remarks." *Id.* Additionally, we also note that the defense did not make any objection to the prosecutor's remarks at the time they were made, nor was a special cautionary instruction requested which could have undone any harm or corrected any misapprehensions on the part of the jurors immediately. Likewise, the matter does not appear to have been called to the trial judge's attention by means of a request for a mistrial or a new trial, which suggests that defendant's concerns about improper influence have arisen in the course of the preparation of this appeal, rather than from perceptions at the time of trial. It is therefore our opinion that reversal is not warranted. *See id.* We further note that the two cases cited by defense counsel in which reversals were granted are distinguishable from the instant case. In *State v. Solomon*, 96 Utah 500, 87 P.2d 807 (1939), the remarks by the prosecutor embellished the alleged criminal acts of the defendants and the crime itself, thereby attributing certain insidious political motives to the defendants' actions. Additionally, the prosecutor had improperly raised a question of the alienage of one of the defendants, which served to increase substantially the potential for prejudice. In *State v. Johnson*, Utah, 663 P.2d 48 (1983), the remarks of the prosecutor accused the defendants of other crimes with which the defendants were not even charged. Further, the evidence in that case was so lacking that the majority reversed the conviction on the ground of insufficiency of the evidence, irrespective of the finding that the prosecutor's remarks were improper and would have warranted reversal. We find no similar abuses in the case before us.

Affirmed.

HALL, C.J., and STEWART, HOWE and ZIMMERMAN, JJ., concur.