The STATE of Utah, Plaintiff
and Respondent,

v.

Wilbur H. BAILEY, Defendant
and Appellant.

No. 19812.

Supreme Court of Utah.

Dec. 31, 1985.

George Waddoups, Salt Lake City, for defendant and appellant.

David L. Wilkinson, Earl F. Dorius, Salt Lake City, for plaintiff and respondent.

DURHAM, Justice:

The defendant appeals from a conviction on burglary, theft, and habitual criminal charges. For the reasons stated below, we affirm.

On August 9, 1979, police officers were called to investigate a burglary at Castleton's warehouse in which sixty-five leather coats were stolen. The officers determined that the burglar had gained access to the warehouse by cutting out a section of the metal overhead door with a torch and rolling up the door. Although the officers were able to recover several fingerprints, the initial investigation produced no suspects, and no arrests were made.

Three and one-half years later, in January 1983, Dennis Daniels, who was then on parole, was stopped for driving under the influence, and a shotgun was found in his car. To avoid prosecution, Daniels told the police that he could give them information about the Castleton's warehouse burglary.

Based on Daniels' information, a fingerprint comparison of the defendant's prints with the two prints found at the scene was made. The examining officer concluded that the defendant's left index finger matched the print lifted from the padlock and his left ring finger matched the print on the cutout piece of the door. An information charging the defendant was issued on February 10, 1983.

In June 1983, defense counsel filed an affidavit with the court indicating that the defendant was in the prison hospital and that his behavior was irrational and disoriented. Further, the prison psychiatrist, Dr. Austin, found that the defendant was not competent to stand trial at that time. A continuance was requested, and two alienists were appointed by court order: Dr. Austin and Dr. Moench. A month later, Dr. Austin concluded that the defendant, having received treatment and medication, was competent to stand trial. Dr. Moench, however, concluded that the defendant was not competent to participate in his own defense. Because of this discrepancy, the court ordered another evaluation to be completed by Dr. Moench and a third alienist, Dr. Clark. In October 1983, both of these doctors determined that the defendant was competent to stand trial.

On November 16, 1983, the defense counsel moved to dismiss the charges, claiming a denial of the defendant's right to a speedy trial. The motion was denied. The defendant's trial was held in February 1984. The court did not hold a hearing on the defendant's competency to stand trial at that time, nor did defense counsel petition for such a hearing.

At trial, Daniels testified that the defendant and another man had approached Daniels and had asked him if he wanted to make some money. Daniels and the other man were to act as lookout while the defendant burglarized a warehouse. Daniels further testified that on the night of the crime he was positioned about 500 feet from the warehouse and could see the defendant unload a torch from the back of his truck. The defendant went to the side of the building and started to cut with the torch. After approximately forty-five minutes, Daniels saw the defendant go into the

warehouse. The defendant made several trips from the warehouse to his truck, and Daniels saw him load something into the back of the truck. Daniels could not tell, however, what it was. The defendant left after he finished loading his truck, and Daniels and the other man joined the defendant fifteen minutes later at the other man's home. The truck was loaded with leather coats, and Daniels received fifteen as his share.

The defendant was convicted by a jury and sentenced on the burglary and theft charges. The defendant then waived his right to a jury on the habitual criminal charge and was convicted on that charge as well, receiving an indeterminate term of five years to life on the habitual criminal charge.

On appeal, the defendant raises five issues: violation of his right to due process and a speedy trial based on the prearrest delay; insufficiency of the evidence; denial of due process by the court's failure to conduct a hearing on the defendant's competence at trial; prejudicial error based on remarks made by the prosecutor during closing argument; and violation of the protection against double jeopardy based on the habitual criminal conviction. We will examine these challenges in order.

## I

The defendant argues that he was denied the right to a speedy trial as guaranteed by the United States and the Utah Constitutions. In this appeal, the defendant asserts that he was prejudiced by the delay as it resulted in his loss of contact with two alibi witnesses. Additionally, the defendant claims that the delay violated fundamental notions of justice and fair play. *United States v. Lovasco,* 431 U.S. 783, 790, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977). The defendant therefore asks this Court to apply the four-factor balancing test for determining the existence of a denial of the right to speedy trial as established by

*Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).[1] The defendant acknowledges, however, that the Supreme Court has found that the right to a speedy trial as provided by the sixth amendment of the United States Constitution does not extend to the period before an arrest is made, *United States v. Marion,* 404 U.S. 307, 321, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); *accord State v. Renzo,* 21 Utah 2d 205, 207, 443 P.2d 392, 394 (1968).

Prearrest delay may, however, violate due process standards, but to establish such a violation, a defendant must show more than prejudice.

> [T]he Due Process Clause of the Fifth Amendment would require dismissal of the indictment if it were shown at trial that the pre-indictment delay in this case caused substantial prejudice to appellee's rights to a fair trial *and* that the delay was an intentional device to gain tactical advantage over the accused.

*Marion,* 404 U.S. at 324, 92 S.Ct. at 465 (footnote and citations omitted; emphasis added). Thus, even assuming that the defendant had made a showing of substantial prejudice, such a showing in itself does not require dismissal, as it is "clear that proof of prejudice is generally a necessary but not sufficient element of a due process claim, and that the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused." *United States v. Lovasco,* 431 U.S. at 790, 97 S.Ct. at 2049; *see also United States v. Revada,* 574 F.2d 1047, 1048 (10th Cir.1978) (two-pronged test for establishing due process violation requires showing of actual prejudice and purposeful delay). The trial judge in this case specifically found, and we agree, that the defendant made no showing that the delay in bringing the charge against him was intentional or designed to produce an advantage for the prosecution. Further, *Lovasco* holds that investigative delay does not give rise to a due process violation even if there is some

---

1. The factors to be considered are (1) length of delay, (2) reason for delay, (3) the defendant's assertion of the right, and (4) prejudice to the

defendant as a result of the delay. *Barker,* 407 U.S. at 530, 92 S.Ct. at 2192; *see also State v. Knill,* Utah, 656 P.2d 1026, 1029 (1982).

prejudice to the defendant. 431 U.S. at 796, 97 S.Ct. at 2051. Although the course of the investigation and the length of the delay in *Lovasco* differed somewhat from that involved in this case, those differences do not warrant a departure from established principles. Finally, we note that the prearrest delay in this case, although considerable, fell short of the four-year statutory period of limitation, U.C.A., 1953, § 76–1–302, which is the primary safeguard against prejudice resulting from having to defend against stale criminal charges. *Marion*, 404 U.S. at 322, 92 S.Ct. at 464. Thus, we find that the prearrest delay in this case does not entitle the defendant to dismissal of the charges against him.

## II

The defendant next argues that the evidence presented on fingerprint comparison was insufficient to support a finding of guilt beyond a reasonable doubt. The defendant points out the following facts to substantiate this claim: construction workers had access to the warehouse in August, 1979, when the burglary was committed, but comparison fingerprints were never obtained from those workers; the defendant had been employed by Castleton's as a carpet cleaner six months prior to the burglary and theft, and his cleaning supplies had been kept in the warehouse during that time, which might account for the presence of his fingerprints at the scene; the detective who examined the prints admitted that contaminants could alter fingerprints. Consequently, the defendant asserts that the fingerprints were insufficient to adequately cover the gap between innocence and guilt, and his conviction should therefore be reversed. *See State v. Petree*, Utah, 659 P.2d 443 (1983).

■ In order to overturn a conviction for insufficiency of the evidence, a defendant must "establish that the evidence was so inconclusive or insubstantial that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime." *State v. Kerekes*, Utah, 622

P.2d 1161, 1168 (1980). The defendant has not met his burden under this standard. The fingerprint expert testified that he found eighteen points of comparison between the print taken from the padlock and the defendant's fingerprint and twelve points of comparison between the print taken from the door piece and another fingerprint from defendant. It was therefore not critical that the police did not make print comparisons of other workers employed at Castleton's during that time. Further, defendant's argument that the prints might have been left over from the time defendant worked at Castleton's is similarly unpersuasive. The burglary took place approximately six months after the defendant stopped working for Castleton's, and the fingerprint expert testified that it was highly improbable that the print found outside would have lasted that long. Finally, the fingerprints were not the only evidence implicating the defendant. In challenging the sufficiency of the evidence, the defendant ignores the testimony of Dennis Daniels, his accomplice. A defendant may be convicted on the uncorroborated testimony of an accomplice. U.C.A., 1953, § 77–17–7(1) (1978); *State v. Smith*, Utah, 706 P.2d 1052, 1055 (1985). Even if the jury had reason to doubt the reliability of the fingerprint analysis, there was sufficient evidence based on Daniel's testimony to find the defendant guilty.

## III

The defendant argues that he was denied due process because the trial court failed to conduct a competency hearing. The defendant contends that he lacked the mental capacity to consult with his lawyer immediately before and during trial and that his conviction should therefore be reversed.

The defendant bases his argument on *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), and *Drope v. Missouri*, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975). In those cases, however, the records provided substantial support for the defendants' claims of incompetence. In both cases, the issue of the

defendants' mental competence at the time of the trial was before the trial courts, *Drope,* 420 U.S. at 177, 179, 95 S.Ct. at 906, 907; *Pate,* 383 U.S. at 376, 384, 86 S.Ct. at 837, 841, and considerable evidence was presented in each case regarding the defendants' mental conditions. Further, in *Drope* the defendant attempted suicide during the course of the trial and was hospitalized for the remainder of the proceeding. The trial judge nonetheless denied a motion for a mistrial, and the defendant was convicted *in absentia.* On appeal, the Supreme Court concluded "that the record reveals a failure to give proper weight to the information suggesting incompetence which came to light *during trial.*" 420 U.S. at 179, 95 S.Ct. at 907 (emphasis added). There was no such evidence before the trial court in this case.

■ Undeniably, the defendant here had a history of mental illness, as did the defendants in *Pate* and *Drope;* however, in this case the most recent psychiatric evaluations had indicated that the defendant was competent. The record before us shows nothing to indicate that the defendant's condition had changed or deteriorated in the period before trial, nor did defense counsel make any such claim at the time. Similarly, no continuance or reevaluation was requested, and defense counsel did not file a petition requesting a competency hearing pursuant to Utah statutory procedure. U.C.A., 1953, § 77–15–3. The defendant relies on the fact that in *Pate* no competency hearing was formally requested, yet the Court ordered a reversal for the failure to hold such a hearing. In *Pate,* however, defense counsel "raised the issue of [the defendant's] incompetence to stand trial." 383 U.S. at 376, 86 S.Ct. at 837. Further, even the prosecutor in that case requested expert testimony as to the defendant's sanity at trial, *id.* at 384, 86 S.Ct. at 841, a continuance of several hours to get a psychiatrist was requested and denied, *id.* at 385 n. 7, 86 S.Ct. at 842 n. 7, and defense counsel argued the question of the defendant's insanity to the trial judge. *Id.* at 384, 86 S.Ct. at 841. The Supreme Court concluded, "With this record we can-

not say that Robinson waived the defense of incompetence to stand trial. We believe that the evidence introduced on Robinson's behalf entitled him to a hearing on this issue." *Id.* at 384–85, 86 S.Ct. at 841–42. The record in this case does not mandate a similar conclusion.

■ Finally, there is another important distinction between the cases cited by the defendant and the case before us. The decisions in both *Pate* and *Drope* were based on state statutes which require that a judge order a competency hearing on his own motion if there is "bona fide doubt" as to competence, *Pate,* 383 U.S. at 385, 86 S.Ct. at 842 (citing Ill.Rev.Stat. ch. 38, § 104–2 (1963)), or if the judge has "reasonable cause" to believe the defendant may not be competent. *Drope,* 420 U.S. at 173, 95 S.Ct. at 904 (citing Mo.Rev.Stat. § 552.-020(2) (1969)). In contrast, Utah's statute does not establish a standard by which inquiry into competence is required; further, an order for a hearing is mandatory only on the filing of a petition, U.C.A., 1953, § 77–15–5. Thus, the trial court has no statutory duty to order a hearing in the absence of a petition. The defendant has not challenged the statute itself or the adequacy of the protection it affords. He merely asserts that based on his history of mental illness and on an unsubstantiated claim of incompetency at trial, he was entitled to a hearing. As the record before us does not support that assertion and no petition was filed in this case, the failure to order and conduct a competency hearing was not error.

## IV

The defendant further argues that a comment made by the prosecution in closing argument constituted prejudicial error. During the plaintiff's closing argument, the prosecutor argued, "Have we heard any testimony in this case that says that the analysis done by Officer Illsley on these fingerprints is incorrect?" In *State v. Valdez,* 30 Utah 2d 54, 513 P.2d 422 (1973), this Court set forth a two-part test

that controls reversal for this type of conduct: "[D]id the remarks call to the attention of the jurors matters which they would not be justified in considering in determining their verdict, and were they, under the circumstances of the particular case, probably influenced by those remarks?" *Id.* at 60, 513 P.2d at 426. The defendant asserts that the prosecutor's statement called to the jurors' attention matters they would not be justified in considering because, in effect, the prosecutor commented on the defendant's failure to bring evidence forward despite the fact that a criminal defendant has no burden of proof and no responsibility to produce evidence.

■ The prosecutor's comment did not, however, constitute reversible error. The statement was not a reference to the defendant's failure to testify but rather, taken in context, was a comment on the weight of the evidence. This Court has held that the prosecution has the duty to argue the case based on the total picture of the evidence or lack of evidence, including the paucity or absence of evidence adduced by the defense. *State v. Bingham,* Utah, 684 P.2d 43, 46 (1984). In this case, the prosecutor reminded the jury of the fingerprint expert's qualifications and pointed out that there had been no serious challenge to his analysis and conclusion. Such a comment, while unfortunate in its phrasing, would not have the effect of shifting the burden of proof to the defendant.

Even assuming that the comment was improper, it was not prejudicial in light of the other evidence establishing the defendant's guilt, especially the testimony of Daniels. Further, defense counsel objected to the comment, and the trial judge immediately admonished the jury not to consider the statement. Finally, the jury instructions also made it clear that the defendant had the right not to take the stand, that no adverse inferences should be drawn from his failure to do so, and that the State had the burden of proving the defendant's guilt beyond a reasonable doubt. The jury was also specifically instructed that it was not bound by the opinion of any expert. Thus, the prosecutor's comment was not reversible error.

## V

■ The defendant's final argument is that Utah's habitual criminal statute, U.C.A., 1953, §§ 76-8-1001, -1002 (1978), violates federal constitutional provisions against double jeopardy. The defendant recognizes that the United States Supreme Court has held that habitual criminal statutes are constitutional. *See, e.g., Gryger v. Burke,* 334 U.S. 728, 732, 68 S.Ct. 1256, 1258, 92 L.Ed. 1683 (1948). Nevertheless, the defendant asks this Court to reconsider the issue. The defendant asserts that the penalty imposed is not for his latest crime, but punishes him a second time for past crimes. He asserts that the habitual criminal offense has no *actus reus* or *mens rea;* therefore, it is not a separate crime. It is merely a new label attached to old offenses to impose an additional penalty for those offenses. On that basis, the defendant argues that the habitual criminal statute violates constitutional guarantees against double jeopardy. He further argues that the statute fails to allow the court to predicate its sentence on the conduct leading to the convictions upon which the charge is based and that therefore the statute violates the principle that the punishment should fit the offense.

The habitual criminal statute has consistently survived constitutional challenge. *State v. Carter,* Utah, 578 P.2d 1275, 1277 (1978). The statute "does not create a new crime; it merely enhances punishment" for the latest crime in cases where the defendant has been previously convicted of and sent to prison for two other felony offenses. *Id.* This is consistent with the purpose of Utah's statute, which is to "make persistent offenders subject to greater sanctions." *State v. Montague,* Utah, 671 P.2d 187, 190 (1983). Further, the Supreme Court of the United States "repeatedly has held that increased penalties for recidivists do not represent punishment for earlier crimes and therefore do not violate the prohibitions against double

jeopardy. Rather, the fact of the earlier crimes aggravates the commission of the latest crime, warranting the imposition of a longer sentence." Note, *The Constitutionality of Statutes Permitting Increased Sentences for Habitual or Dangerous Criminals,* 89 Harv.L.Rev. 356, 361 n. 29 (1975) (citations omitted). All that was required in this case was a determination that the defendant had a criminal history that met the statutory standard as to number and degree of seriousness. As that requirement was met, the defendant properly received an enhanced sentence for his latest conviction. We therefore find no error.

The judgment of conviction is affirmed.

HALL, C.J., and STEWART, HOWE and ZIMMERMAN, JJ., concur.